IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[1] | Case No. 15-17314 |
| Debtor. | Hon. Pamela S. Hollis |

ORDER (A) APPROVING 800 CITY APARTMENTS LLC
AS THE STALKING-HORSE BIDDER IN CONNECTION WITH THE SALE OF THE
DEBTOR'S REAL PROPERTY COMMONLY KNOWN AS THE 800 BUILDING,
LOCATED IN LOUISVILLE, KENTUCKY, (B) APPROVING BIDDING PROCEDURES
AND BID PROTECTIONS, (C) SCHEDULING AN AUCTION AND A SALE
HEARING, (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(E) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT
OF CONTRACTS AND LEASES, AND (F) GRANTING RELATED RELIEF

Upon the motion (the "*Motion*")[2] of The 800 Building, LLC, as debtor and debtor in possession (the "*Debtor*") for, among other things, entry of (a) an order (this "*Bidding Procedures Order*") (i) approving 800 City Apartments LLC as the stalking-horse bidder (the "*Stalking-Horse Bidder*") for the Debtor's apartment building and related assets located at 800 South 4th Street, Louisville, Kentucky ("*The 800 Building*"), as more particularly defined in and pursuant to the proposed Purchase and Sale Agreement, as amended, attached to the Motion as Exhibit A (the "*Stalking-Horse Purchase Agreement*") and authorizing the Debtor to pay the

---

[1] Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596. The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

[2] *Motion for Entry of: (I) an Order (A) Approving 800 City Apartments LLC as the Stalking-Horse Bidder in Connection with the Sale of the Debtor's Apartment Building and Related Assets; (B) Approving Bidding Procedures and Bid Protections; (C) Scheduling an Auction and a Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) After Further Notice and a Hearing, an Order (A) Approving a Purchase and Sale Agreement; (B) Authorizing the Sale of The 800 Building Free and Clear of All Liens, Claims, Encumbrances, and Interests; (C) Authorizing the Assumption and Assignment of Contracts and Leases; and (D) Granting Related Relief.*

AM 50314407.5

Stalking-Horse Bidder a break-up fee of $618,000 (the "*Break-Up Fee*") and reimbursement of out-of-pocket costs of up to $50,000 (the "*Expense Reimbursement*" and, together with the Break-Up Fee, the "*Stalking-Horse Protections*") if a competing bidder is approved by this Court as the Successful Bidder (as defined below), (ii) approving the bidding procedures and bid protections attached hereto as **Exhibit 1** (the "*Bidding Procedures*"), (iii) scheduling an auction of The 800 Building (the "*Auction*") and a hearing (the "*Sale Hearing*") to approve the results of Auction and the sale of The 800 Building free and clear of all liens, claims, encumbrances, and interests (the "*Sale*"), (iv) approving the form and manner of notice of the Auction and the Sale attached to the Motion as Exhibit C (the "*Sale Notice*"), (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "*Contracts*"), and (vi) granting related relief; and (b) at the conclusion of the Sale Hearing, an order substantially in the form attached to the Motion as Exhibit D (the "*Sale Order*") (i) approving a purchase and sale agreement for the Sale, (ii) approving the results of the Auction and authorizing the Sale of The 800 Building to the Successful Bidder, (iii) authorizing the assumption and assignment of the Contracts, and (iv) granting related relief; and the Court having considered the Motion and all pleadings associated with that motion; and upon the arguments of counsel and the evidence presented at the hearing on the Sale Procedures Motion; and after due deliberation and sufficient cause therefor,

**THE PARTIES STIPULATE THAT:**

    A.    Capitalized terms not otherwise defined in this order shall have the respective meanings attributed to such terms in the Motion.

B. This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. The Sale of The 800 Building will be subject to higher and better offers, if any, and the opportunity for public auction and sale, free and clear of all liens, claims, encumbrances, and interests.

D. In connection with the Stalking-Horse Purchase Agreement, Purchaser has submitted a deposit of $1.1 million in the aggregate, $100,000 with the Debtor and $1 million of which is presently held in escrow, (collectively, the "*Deposit*").

E. The Stalking-Horse Purchase Agreement provides that the Stalking-Horse Bidder is entitled to receive a break-up fee of $618,000 (the "*Break-Up Fee*"), plus reimbursement of out-of-pocket costs, including attorneys' fees, not to exceed $50,000 (the "*Expense Reimbursement*" and, together with the Break-Up Fee, the "*Stalking-Horse Protections*"), if The 800 Building is ultimately sold to a party other than the Stalking-Horse Bidder pursuant to an Alternative Transaction, in consideration of Stalking-Horse Bidder having negotiated the Stalking-Horse Purchase Agreement and the transactions contemplated therein, and conducting due diligence related to the Stalking-Horse Purchase Agreement and The 800 Building. As used in this Order, an "*Alternative Transaction*" means the sale, transfer, lease (other than leases to tenants in the ordinary course of the Debtor's business) or other disposition of The 800 Building, whether directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction or series of transactions with one or more persons or entities, other than to the Stalking-Horse Purchaser (or the Stalking-Horse Purchaser's successor in interest) or other than pursuant to the Stalking-Horse Agreement.

F. The Stalking-Horse Bidder has expended, and likely will continue to expend, considerable time and substantial money and energy pursuing the Sale and has engaged in extended due diligence and good-faith prepetition negotiations with the Debtor. The Stalking-Horse Purchase Agreement is the culmination of these efforts.

G. The Debtor and the Stalking-Horse Bidder have represented to the Court that approval of the Stalking-Horse Protections will benefit the Debtor's estate because: (1) the Stalking-Horse Protections were a material inducement for, and a condition of, the Stalking-Horse Bidder's willingness to amend the Stalking-Horse Purchase Agreement to provide for a public sale; (2) the Stalking-Horse Bidder is unwilling to act as the stalking-horse bidder without the Stalking-Horse Protections; (3) by having Stalking-Horse Bidder as a stalking-horse for the Sale, much of the due diligence, contract negotiation and other work necessary to submit a bid for The 800 Building will have been completed. This will shorten the time and lessen the cost required for prospective bidders to submit a Competing Bid (as defined below) and will therefore promote such bids; (4) the sale of The 800 Building without a stalking-horse bidder would be more time-consuming, more expensive and likely would result in a reduced prospect for competitive bids.

H. The Debtor and the Stalking-Horse Bidder have further represented to the Court that the Stalking-Horse Protections were negotiated by the parties in good faith and at arms' length, and that they are fair and reasonable in view of, among other things, (1) the intensive analysis, due diligence investigation, and negotiation undertaken by the Stalking-Horse Bidder in connection with the Sale, and (b) the fact that Stalking-Horse Bidder's efforts have increased the chances that the Debtor will maximize the value of The 800 Building by establishing a bid standard and minimum for other bidders, placing The 800 Building in a sale mode thereby

potentially attracting other bidders to an auction, and serving as a catalyst for other potential or actual bidders for The 800 Building, to the benefit of the estate, its creditors and all other parties in interest.

I.  Finally, the Debtor and the Stalking-Horse Bidder have represented to the Court that time is of the essence to complete the Sale because the Stalking-Horse Bidder's financing commitment expires on June 15, 2015 and the Debtor will be required to pay a $500,000 forbearance fee if its first-lien debt is not repaid by June 30, 2015.

J.  Upon the initial presentment of the Motion in open court, the Debtor and the Stalking-Horse Bidder have represented that (a) the Debtor has conferred with the Office of the U.S. Trustee (the "*U.S. Trustee*"), and (b) the Debtor and the Stalking-Horse Bidder have agreed to the following changes to the relief requested in the Motion:

    a.  The Stalking-Horse Bid Protections shall be limited to just a $600,000 Break-Up Fee; and

    b.  The Bidding Procedures have been revised from the form attached to the Motion as follows:

        i.  The Bid Deadline has been extended to June 8, 2015, at 12:00 p.m. Central Time;

        ii.  The Auction, if any, shall be scheduled for June 8, 2015, at 2:00 p.m. Central Time; and

        iii.  The Sale Hearing shall be scheduled for June 9, 2014, at 11:00 a.m. Central Time.

K. Counsel for the U.S. Trustee has represented to the Court at the initial presentment of the Motion that, with the foregoing changes, the U.S. Trustee does not object to the entry of this Order.

L. Notice of the Motion for the purposes of initial presentment and entry of this Bidding Procedures Order was appropriate under the circumstances, and no further notice is necessary or required.

M. Based upon the forgoing, good and sufficient cause exists for the entry of this Bidding Procedures Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. The Motion is hereby granted as set forth below.

2. The Bidding Procedures are approved and shall apply to the Sale of The 800 Building.

3. The Stalking-Horse Protections are limited to a $600,000 Break-Up Fee only and are approved as set forth below. In the event the Stalking-Horse Purchase Agreement is terminated due to this Court approving the Sale of The 800 Building in an Alternative Transaction, the Stalking-Horse shall be entitled to receive the $600,000 Break-Up Fee. Subject to the closing of the Alternative Transaction, the Debtor shall: (a) return to the Stalking-Horse Bidder the $100,000 of Deposit held by the Debtor; (b) direct the escrow agent jointly with the Stalking-Horse Bidder to refund the $1 million of the Deposit held by the escrow agent to the Stalking-Horse Bidder; and (c) pay to the Stalking-Horse Bidder the Break-Up Fee. Payment of the Expense Reimbursement shall be subject to application before this Court by either the Stalking-Horse Purchaser or the Debtor. The Deposit and the Break-Up Fee shall be paid to

Purchaser within one (1) business day of the closing of an Alternative Transaction as an allowed administrative expense claim in the Bankruptcy Case pursuant to Section 503(b)(1) of the Bankruptcy Code, which shall have priority over every other claim allowable under such subsection.

4. In the event (a) the Debtor is unable or unwilling to perform under or otherwise breaches the terms of the Stalking-Horse Purchase Agreement or (b) the Stalking-Horse Bidder elects to extend the Closing Date for an additional 60 days under the terms of the Stalking-Horse Purchase Agreement and the Bankruptcy Court does not enter the Sale Order after the expiration of such extended Closing Date, then the Stalking-Horse Bidder shall have the right to terminate the Stalking-Horse Purchase Agreement, in which event the Debtor shall refund the $100,000 Deposit and cause the Escrow Agent to Refund the $1,000,000 Deposit within 1 business day after the Stalking-Horse Bidder's termination.

5. The following procedures shall apply with respect to executory contracts and/or unexpired leases that are proposed to be assumed and assigned pursuant to the Purchase Agreement (collectively the "*Contracts*"):

    a. Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure cost amount, if any, as set forth in the Notice of Sale and Assumption and Assignment of Contracts (the "*Assumption*"), or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses, whether monetary or nonmonetary (including accrued but not yet due obligations) must be cured or satisfied under any of the Contracts in order for such contract or lease to be assumed and/or assigned (collectively, a "*Cure Cost*"), must file and serve an objection (an "*Assumption/Assignment Objection*") so that such Assumption/Assignment Objection is docketed and received by the Service Parties not later than the Bid Deadline (the "*Assumption/Assignment Objection Deadline*").

    b. An Assumption/Assignment Objection must set forth with specificity any and all Cure Costs which such party asserts must be cured or satisfied in connection with the assumption and assignment of such Assumed Contract; provided, however, that any party to an Assumed Contract shall retain the right to object solely with respect to adequate assurance of future performance until the Sale Hearing only if such objection was raised in an Assumption/Assignment Objection on or prior to the

Assumption/Assignment Objection Deadline. An Assumption/Assignment Objection shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions (whether monetary or nonmonetary to assumption and assignment, and the support therefor, and all other objections to assumption and assignment.

c. Unless an Assumption/Assignment Objection is filed and served by the Assumption/Assignment Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure cost and to have otherwise consented to the assumption and assignment and shall be forever barred and estopped from asserting or claiming against the Debtor, the purchaser of The 800 Building, or any other assignee of the relevant Assumed Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such contract for the period prior to the Closing Date. Upon entry of the Sale Order and Closing of the sale of The 800 Building, each non-debtor party to each Assumed Contract will be required to fully perform all duties and obligations arising under such Assumed Contract, according to its terms.

d. Hearings with respect to any Assumption/Assignment Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Court may designate; provided that the subject Assumed Contract may be assumed and assigned prior to resolution of any Assumption/Assignment Objection if the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) is deposited by the Debtor to be held in a segregated account maintained by the Debtor or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

e. The Debtor will serve the Assumption Notice on all parties to the Contracts.

6. The proposed form of Assumption Notice attached to the Motion as Exhibit G is hereby approved, and the Debtor is authorized to serve, via first-class U.S. mail, the Assumption Notice, and no other notice is necessary or required with respect to the assumption and assignment of the Contracts.

7. In the event the party who submits the highest and best bid for The 800 Building fails to close on the sale through no fault of the Debtor, such party's earnest money deposit shall be forfeited to the Debtor.

8. Stalking-Horse Bidder's right to the Break-Up Fee and return of the Deposit, under the terms and conditions set forth in the Stalking-Horse Purchase Agreement, is hereby

AM 50314407.5

8

deemed to be an allowed administrative expense claim against the estate under section 503(b) of the Bankruptcy Code with priority over every other claim allowable under such subsection. The Debtor is authorized and directed to immediately pay the Break-Up Fee if and when the Debtor's obligation arises thereunder, without any other or further notice or order of this Court. The Debtor's obligation to pay the Break-Up Fee: (a) shall survive termination of the Stalking-Horse Purchase Agreement, according to the terms thereof; and (b) shall be binding on any successor to the Debtor, including any trustee subsequently appointed in this case.

9. The Debtor's and the Stalking-Horse Bidder's rights to the Deposit shall be governed by this Bidding Procedures Order. If the Stalking-Horse Purchase Agreement is terminated, the Deposit shall be released to the Stalking-Horse Bidder or the Debtor in accordance with the terms of the Stalking-Horse Purchase Agreement and this Bidding Procedures Order without further notice or order of the Court (and the automatic stay under section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit such release and any actions that may be necessary or proper for any party to take to effectuate such release in accordance with the terms of the Stalking-Horse Purchase Agreement).

10. This Court retains jurisdiction over any matters related to or arising from: (a) the implementation of this Bidding Procedures Order; and (b) the Stalking-Horse Purchase Agreement and all related agreements.

11. The Debtor is hereby authorized and empowered to take such steps and do such other things as may be necessary to implement and effect the terms and requirements established by this Bidding Procedures Order.

12. The Sale Hearing to consider approval of the Sale to the Successful Bidder shall take place on June 9, 2015, at 11:00 a.m. Central Time.

AM 50314407.5

Enter:

_____
United States Bankruptcy Judge

Dated: MAY 2 1 2015

**Prepared by:**
David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-201-2000
Facsimile: 312-201-2555
david.fischer@lockelord.com
phillip.nelson@lockelord.com

AM 50314407.5

10