**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[1] | Case No. 15-17314 |
| Debtor. | Hon. Jacqueline P. Cox |

**NOTICE OF FILING OF
CERTIFICATION OF CANCELLATION OF AUCTION**

TO: SEE ATTACHED SERVICE LIST

     **PLEASE TAKE NOTICE** that on June 9, 2015, the above-captioned debtor and debtor in possession (the "*Debtor*") filed the attached *Certification of Cancellation of Auction* in connection with the *Order (a) Approving 800 City Apartments LLC as the Stalking-Horse Bidder in connection with the Sale of the Debtor's Real Property Commonly known as The 800 Building, Located in Louisville Kentucky, (b) Approving Bidding Procedures and Bid Protections, (c) Scheduling an Auction and a Sale Hearing, (d) Approving the Form and Manner of Notice Thereof, (e) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (f) Granting Related Relief* [Docket No. 11].

Dated: June 9, 2015

                              Respectfully submitted,

                              **THE 800 BUILDING, LLC**

                              By:   */s/ Phillip W. Nelson*
                                      One of Its Attorneys

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-201-2000
Facsimile: 312-201-2555
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Proposed Counsel for the Debtor*

---

[1]    Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596. The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

## Service List

**Via Electronic Case Filing System Service:**

- Patrick S Layng
  USTPRegion11.ES.ECF@usdoj.gov

- Judy B. Calton on behalf of 800 City Apartments, LLC
  jcalton@honigman.com

- Edward P. Freud on behalf of Republic Bank of Chicago
  epfreud@rfbnlaw.com

- Mary L Fullington on behalf of Creditor Wyatt, Tarrant & Combs, LLP
  lexbankruptcy@wyattfirm.com

- Gregory J Jordan on behalf of Creditor Fine Homes LLC
  gjordan@jz-llc.com

- Patrick S Layng
  USTPRegion11.ES.ECF@usdoj.gov

- Phillip W. Nelson on behalf of Debtor The 800 Building, LLC
  phillip.nelson@lockelord.com,
  karen.soto@lockelord.com;ChicagoDocket@lockelord.com

- Michael Lee Tinaglia on behalf of Creditor International Bank of Chicago
  mltinaglia@tinaglialaw.com, jmwretzky@tinaglialaw.com

- Mark R Zito on behalf of Creditor Fine Homes LLC
  mzito@jz-llc.com

**Certificate of Service**

I, Phillip W. Nelson, an attorney, certify that I caused a copy of the foregoing *Notice of Filing* and the related the *Certification of Cancellation of Auction* to be served on the foregoing Service List via the Court's ECF System on the date hereof.

Date: June 9, 2015

/s/ Phillip W. Nelson
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-201-2000
Facsimile: 312-201-2555
phillip.nelson@lockelord.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[2] | Case No. 15-17314 |
| Debtor. | Hon. Jacqueline P. Cox |

**NOTICE OF FILING OF**
**CERTIFICATION OF CANCELLATION OF AUCTION**

The undersigned attorney certifies that:

1.      On May 21, 2015, this Court entered the *Order (a) Approving 800 City Apartments LLC as the Stalking-Horse Bidder in connection with the Sale of the Debtor's Real Property Commonly known as The 800 Building, Located in Louisville Kentucky, (b) Approving Bidding Procedures and Bid Protections, (c) Scheduling an Auction and a Sale Hearing, (d) Approving the Form and Manner of Notice Thereof, (e) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (f) Granting Related Relief* [Docket No. 11] (the "**Bidding Procedures Order**") which, among other things, approved certain bidding procedures attached to the Bidding Procedures Order as **Exhibit 1** (the "**Bidding Procedures**") for the sale of the apartment building and related assets located at 800 South 4th Street, Louisville, Kentucky ("**The 800 Building**"), presently owned by the above-captioned debtor and debtor in possession (the "**Debtor**").

2.      Pursuant to the Bidding Procedures, parties interested in purchasing The 800 Building were to submit conforming bids to the Debtor's counsel no later than 12:00 p.m. Central Time on June 8, 2015 (the "**Bid Deadline**"), with an auction (the "**Auction**") to take

---

[2]      Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596.  The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

place as 2:00 p.m. Central Time at the offices of the Debtor's counsel if qualifying bids were received by the Bid Deadline.

3.      No bids for The 800 Building were received by the Debtor, the Debtor's counsel, or the Debtor's real estate broker — or, as far as I am aware, any other party — whether by the Bid Deadline or thereafter.

4.      At approximately 1:30 p.m., on June 8, 2015, the parties gathered at the offices of the Debtor's counsel went on the record to confirm that no bids were received by the Bid Deadline and that, pursuant to Paragraph E of the Bidding Procedures, the Auction was cancelled.

5.      A true copy of the transcript of the cancellation of the Auction is attached hereto as **<u>Exhibit 1</u>**.

Date: June 9, 2015                              */s/ Phillip W. Nelson*
                                                Phillip W. Nelson
                                                LOCKE LORD LLP
                                                111 South Wacker Drive
                                                Chicago, Illinois 60606
                                                Telephone: 312-201-2000
                                                Facsimile: 312-201-2555
                                                phillip.nelson@lockelord.com

**Exhibit 1**

The 800 Building, LLC

15-17314

Auction

Taken on:  June 08, 2015



**JENSEN LITIGATION SOLUTIONS**
180 North LaSalle Street
Suite 2800
Chicago, IL  60601
312.236.6936
877.653.6736
www.jensenlitigation.com

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
        IN RE:                        )
 4                                    )
        THE 800 BUILDING, LLC         ) BK No. 15-17314
 5                                    )
                                      )
 6                    Debtor.         )

 7

 8              The auction, called by the Debtors, taken

 9     pursuant to notice and pursuant to the United States

10     Code and Federal Rules of Bankruptcy Procedures

11     pertaining to auction, taken before April M. Metzler,

12     Certified Shorthand Reporter, Registered Professional

13     Reporter, Certified Realtime Reporter, and Notary

14     Public, at 111 South Wacker Drive, 41st Floor, Chicago,

15     Illinois, commencing at 1:27 p.m. on the 8th day of

16     June, 2015.

17

18

19

20

21

22

23

24
```



```
 1   APPEARANCES:

 2        LOCKE LORD, LLP
          MR. PHILLIP W. NELSON
 3        111 South Wacker Drive
          Suite 4100
 4        Chicago, Illinois 60606
          Phone:  (312) 201-2000
 5        E-Mail:  phillip.nelson@lockelord.com

 6             On behalf of the Debtor;

 7        HONIGMAN MILLER SCHWARTZ AND COHN LLP
          MS. JUDY B. CALTON
 8        2290 First National Building
          660 Woodward Avenue
 9        Detroit, Michigan 48226
          Phone: (313) 465-7344
10        E-Mail:  jcalton@honigman.com

11             On behalf of 800 City Apartments LLC.

12   ALSO PRESENT:

13        Mr. George Tikijian III, CCIM
               On behalf of Tikijian Associates;
14
          Mr. Leon Petcov
15             Manager of The 800 Building, LLC.

16                  *    *    *    *    *    *

17

18

19

20

21

22

23

24
```



The 800 Building, LLC
Auction  - 06/08/2015                                                    Page 3

```
 1                        I N D E X

 2   WITNESS                                          PAGE

 3

 4        Auction.................................   4

 5

 6

 7                    E X H I B I T S

 8   AUCTION EXHIBIT                                  PAGE

 9

10        1......................................   4

11

12

13

14

15

16

17

18

19

20

21

22

23

24   (Exhibits attached.)
```



The 800 Building, LLC
Auction  - 06/08/2015                                                    Page 4

1        MR. NELSON:  Let's go ahead and go on the record.

2            This is the scheduled auction for the

3    Chapter 11 case, The 800 Building, LLC, case number

4    15-17314 in the United States Bankruptcy Court for the

5    Northern District of Illinois, Eastern Division.

6            Pursuant to the document that we will include

7    as Exhibit 1, which is a notice of sale hearing, as the

8    notice states, the bankruptcy case was filed on

9    May 15th.  On the same day there was a sale motion filed

10   to approve bidding procedures, stalking-horse

11   protections, and ultimately a sale for The 800 Building

12   or, rather, the 800 building.  Its address is 800 South

13   Fourth Street, Louisville, Kentucky.

14           The Bankruptcy Court approved the bidding

15   procedures order, which is attached to the auction

16   exhibit as Exhibit A.  The order was approved on

17   May 21st, scheduling an auction for today beginning at

18   2:00 p.m.

19           Pursuant to the order and the bid procedures

20   that were attached to the -- thereto as Exhibit 1, the

21   bids, if any, were due to be submitted to debtor's

22   counsel by 12:00 o'clock central time today.  No bids

23   were received by debtor's counsel.

24           With me here as well are George Tikijian of



1   Tikijian Associates, the debtor's broker.

2         George, if you can confirm that your office

3   hasn't received any bids for the property either?

4      MR. TIKIJIAN:  This is George Tikijian.  Our office

5   has not received any bids for The 800.

6      MR. NELSON:  It is now approximately 1:30 or 1:45.

7   Accordingly, pursuant to the bidding procedures, we are

8   going to cancel the auction.

9         For the record here with me as well is Judy

10  Calton from the -- counsel for the stalking-horse

11  bidder, 800 City Apartments, LLC.

12     MS. CALTON:  Yeah.

13     MR. NELSON:  And Leon Petcov, the managing member

14  of the debtor.  No one else is present with us.

15        Accordingly, we are going to conclude that

16  there are no bidders and that if we were to conduct the

17  auction, the stalking-horse bidder would be the

18  successful bidder.

19        So with that we'll go off record.

20                    (Which were all the proceedings had

21                     at this time at the above-entitled

22                     auction.)

23

24



The 800 Building, LLC
Auction  - 06/08/2015                                                                 Page 6

1

  UNITED STATES OF AMERICA          )
2 NORTHERN DISTRICT OF ILLINOIS    )
  EASTERN DIVISION                  )   SS.
3 STATE OF ILLINOIS                 )
  COUNTY OF COOK                    )
4

5          I, April M. Metzler, Certified Shorthand

6 Reporter, Registered Professional Reporter, Certified

7 Realtime Reporter, and Notary Public, do hereby certify

8 that the above auction was reported stenographically by

9 me and reduced to typewriting under my personal

10 direction.

11          I further certify that the said auction was

12 taken at the time and place specified and that the

13 taking of said auction commenced on the 8th day of

14 June, 2015, at 1:27 p.m.

15          I further certify that I am not a relative or

16 employee or attorney or counsel of any of the parties,

17 nor a relative or employee of such attorney or counsel,

18 nor financially interested directly or indirectly in

19 this action.

20

21

22

23

24



The 800 Building, LLC
Auction  - 06/08/2015

Page 7

1          In witness whereof, I have hereunto set my

2     hand and affixed my seal of office at Chicago, Illinois,

3     this 8th day of June, 2015.

4

5

6

7                          _____

8                          APRIL M. METZLER, CSR, RPR, CRR, FCRR
                           180 North LaSalle Street
9                          Suite 2800
                           Chicago, Illinois 60601
10                         Phone:  (312) 236-6936

11

12     CSR No. 084-004394

13

14

15

16

17

18

19

20

21

22

23

24



The 800 Building, LLC
Auction  - 06/08/2015

Index: 1..United

**1**

**1** 4:7,20
**11** 4:3
**12:00** 4:22
**15-17314** 4:4
**15th** 4:9
**1:30** 5:6
**1:45** 5:6

**2**

**21st** 4:17
**2:00** 4:18

**8**

**800** 4:3,11,12 5:5, 11

**A**

**above-entitled** 5:21
**address** 4:12
**ahead** 4:1
**Apartments** 5:11
**approve** 4:10
**approved** 4:14,16
**approximately** 5:6
**Associates** 5:1
**attached** 4:15,20
**auction** 4:2,15,17 5:8,17,22

**B**

**bankruptcy** 4:4,8, 14
**beginning** 4:17
**bid** 4:19

**bidder** 5:11,17,18
**bidders** 5:16
**bidding** 4:10,14 5:7
**bids** 4:21,22 5:3,5
**broker** 5:1
**building** 4:3,11,12

**C**

**Calton** 5:10,12
**cancel** 5:8
**case** 4:3,8
**central** 4:22
**Chapter** 4:3
**City** 5:11
**conclude** 5:15
**conduct** 5:16
**confirm** 5:2
**counsel** 4:22,23 5:10
**Court** 4:4,14

**D**

**day** 4:9
**debtor** 5:14
**debtor's** 4:21,23 5:1
**District** 4:5
**Division** 4:5
**document** 4:6
**due** 4:21

**E**

**Eastern** 4:5
**exhibit** 4:7,16,20

**F**

**filed** 4:8,9

**Fourth** 4:13

**G**

**George** 4:24 5:2,4

**H**

**hearing** 4:7

**I**

**Illinois** 4:5
**include** 4:6

**J**

**Judy** 5:9

**K**

**Kentucky** 4:13

**L**

**Leon** 5:13
**LLC** 4:3 5:11
**Louisville** 4:13

**M**

**managing** 5:13
**member** 5:13
**motion** 4:9

**N**

**NELSON** 4:1 5:6, 13
**Northern** 4:5
**notice** 4:7,8
**number** 4:3

**O**

**office** 5:2,4

**order** 4:15,16,19

**P**

**p.m.** 4:18
**Petcov** 5:13
**present** 5:14
**procedures** 4:10, 15,19 5:7
**proceedings** 5:20
**property** 5:3
**protections** 4:11
**pursuant** 4:6,19 5:7

**R**

**received** 4:23 5:3, 5
**record** 4:1 5:9,19

**S**

**sale** 4:7,9,11
**scheduled** 4:2
**scheduling** 4:17
**South** 4:12
**stalking-horse** 4:10 5:10,17
**states** 4:4,8
**Street** 4:13
**submitted** 4:21
**successful** 5:18

**T**

**thereto** 4:20
**Tikijian** 4:24 5:1,4
**time** 4:22 5:21
**today** 4:17,22

**U**

**ultimately** 4:11
**United** 4:4


JENSEN
Litigation Solutions

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[1] | Case No. 15-17314 |
| Debtor. | Hon. Pamela S. Hollis |

### NOTICE OF THE SALE OF THE 800 BUILDING

**PLEASE TAKE NOTICE** that on May 15, 2015, The 800 Building, LLC, as debtor and debtor in possession (the "*Debtor*") filed the *Motion for Entry of: (I) an Order (A) Approving 800 City Apartments LLC as the Stalking-Horse Bidder in Connection with the Sale of the Debtor's Apartment Building and Related Assets; (B) Approving Bidding Procedures and Bid Protections; (C) Scheduling an Auction and a Sale Hearing; (D) Approving the Form and Manner of Notice Thereof, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) After Further Notice and a Hearing, an Order (A) Approving a Purchase and Sale Agreement; (B) Authorizing the Sale of The 800 Building Free and Clear of All Liens, Claims, Encumbrances, and Interests; (C) Authorizing the Assumption and Assignment of Contracts and Leases; and (D) Granting Related Relief* [Docket No. 3] (the "*Sale Motion*") with the United States Bankruptcy Court for the Northern District of Illinois (the "*Court*") seeking, among other things, the entry of an order (the "*Sale Order*") authorizing and approving: (a) the sale of the Debtor's apartment building and related assets located at 800 South 4th Street, Louisville, Kentucky ("*The 800 Building*" or the "*Property*") free and clear of all liens, claims, interest, encumbrances, and other interests, with such attaching with the same validity and priority to the sale proceeds; and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "*Contracts*") to the successful purchaser (the "*Purchaser*").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtor is soliciting offers for the purchase of either or both of The 800 Building consistent with the Bidding Procedures approved by the Court by entry of an order on May 21, 2015 [Docket No. 11] (the "*Bidding Procedures Order*"), a copy of which is attached hereto as **Exhibit A**. *All interested bidders should carefully read the Bidding Procedures and the Bidding Procedures order.* To the extent that there are any inconsistencies between this notice and the Bidding procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

---

[1]  Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596. The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

[2]  Capitalized terms used herein as defined terms and not otherwise defined shall have the meanings ascribed to them in the Sale Motion.

AM 50322937.2



**PLEASE TAKE FURTHER NOTICE** that if the Debtor receives qualified competing bids within the requirements and timeframe specified by the Bidding Procedures, the Debtor will conduct an auction (the "*Auction*") of The 800 Building at **2:00 p.m. Central Time on June 8, 2015** at the offices of Locke Lord, LLP, 111 S. Wacker Dr., Chicago, IL 60606 (or at such other location as the Debtor may hereafter designate on proper notice).

**PLEASE TAKE FURTHER NOTICE** that the Debtor will seek approval of the Sale at a hearing scheduled to commence at **June 9, 2015 at 11:00 a.m. Central Time** (the "*Sale Hearing*") before the Honorable Jacqueline Cox in Courtroom 680, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other judge who may be sitting in her place and stead.  The Sale Hearing may be adjourned by the Court without further notice other than by announcement in open court or on the Court's calendar.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Contracts, objections, if any, to the relief requested in the Sale Motion *must*: (a) be in writing, (b) conform with applicable provisions of the Bankruptcy Rules and the Local Rules of the Court, (c) state with particularity the legal and factual bases for the objection, (d) be filed with the Court and served on the following parties (the "*Notice Parties*") so as to be *actually received* no later than **June 8, 2015 at 5:00 p.m. Central Time** (the "*Sale Objection Deadline*"): (i) proposed counsel for the Debtor, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, Attn: David J. Fischer and Phillip W. Nelson (david.fischer@lockelord.com; phillip.nelson@locklord.com); and (ii) (b) the office of the United States Trustee for the Northern District of Illinois, 219 S. Dearborn St., Chicago, Illinois 60604, Attn.: Patrick S. Layng and Kathryn M. Gleason (USTPRegion11.ES.ECF@usdoj.gov; kathryn.m.gleason@usdoj.gov).  A party's failure to timely file or make an Objection shall be deemed to constitute such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

### CONSEQUENCES OF FAILING TO MAKE A TIMELY OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THIS NOTICE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PROPERTIES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.**

---

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

The proposed Sale Order provides that the Successful Bidder(s) arising from the Auction, if any, will have no responsibility for, and The 800 Building will be sold free and clear of, any successor liability, including the following: (a) any liability or other obligation of the Debtor's estates or related to The 800 Building other than as expressly set forth in the applicable Purchase and Sale Agreement; or (b) any claims against the Debtor, its, or any of its predecessors or affiliates. Except as expressly provided in the Sale Order, the Successful Bidder(s) shall have no liability whatsoever with respect to the business, operations, or obligations of the Debtor, its estate, or that of any of its predecessors or affiliates based, in whole or part, directly or indirectly, on any theory of successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the closing of the Sale, now existing, or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the closing of the Sale, including, without limitation, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of The 800 Building prior to the closing of the Sale.

---

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, and any exhibits thereto, the Bidding Procedures Order, the Bidding Procedures, the Purchase and Sale Agreement, and the proposed Sale Order are available: (a) from the Debtor's proposed counsel Locke Lord LLP, 111 S. Wacker Dr., Chicago, Illinois 60606, Attn: Phillip W. Nelson, Tel: 312-201-2575; or (b) via the Court's PACER system by visiting http://www.ilnb.uscourts.gov.

Dated: May 22, 2015

Respectfully submitted,

**THE 800 BUILDING, LLC**

By: _/s/ Phillip W. Nelson_
    One of Its Attorneys

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-201-2000
Facsimile: 312-201-2555
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Proposed Counsel for the Debtor*

AM 50322937.2                                3

**Exhibit A**

**Bidding Procedures Order**

AM 50322937.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[1] | Case No. 15-17314 |
| Debtor. | Hon. Pamela S. Hollis |

**ORDER (A) APPROVING 800 CITY APARTMENTS LLC
AS THE STALKING-HORSE BIDDER IN CONNECTION WITH THE SALE OF THE
DEBTOR'S REAL PROPERTY COMMONLY KNOWN AS THE 800 BUILDING,
LOCATED IN LOUISVILLE, KENTUCKY, (B) APPROVING BIDDING PROCEDURES
AND BID PROTECTIONS, (C) SCHEDULING AN AUCTION AND A SALE
HEARING, (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(E) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT
OF CONTRACTS AND LEASES, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "*Motion*")[2] of The 800 Building, LLC, as debtor and debtor in

possession (the "*Debtor*") for, among other things, entry of (a) an order (this "*Bidding*

*Procedures Order*") (i) approving 800 City Apartments LLC as the stalking-horse bidder (the

"*Stalking-Horse Bidder*") for the Debtor's apartment building and related assets located at 800

South 4th Street, Louisville, Kentucky ("*The 800 Building*"), as more particularly defined in and

pursuant to the proposed Purchase and Sale Agreement, as amended, attached to the Motion as

Exhibit A (the "*Stalking-Horse Purchase Agreement*") and authorizing the Debtor to pay the

---

[1]   Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596. The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

[2]   *Motion for Entry of: (I) an Order (A) Approving 800 City Apartments LLC as the Stalking-Horse Bidder in Connection with the Sale of the Debtor's Apartment Building and Related Assets; (B) Approving Bidding Procedures and Bid Protections; (C) Scheduling an Auction and a Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases; and (F) Granting Related Relief; and (II) After Further Notice and a Hearing, an Order (A) Approving a Purchase and Sale Agreement; (B) Authorizing the Sale of The 800 Building Free and Clear of All Liens, Claims, Encumbrances, and Interests; (C) Authorizing the Assumption and Assignment of Contracts and Leases; and (D) Granting Related Relief.*

Stalking-Horse Bidder a break-up fee of $618,000 (the "*Break-Up Fee*") and reimbursement of out-of-pocket costs of up to $50,000 (the "*Expense Reimbursement*" and, together with the Break-Up Fee, the "*Stalking-Horse Protections*") if a competing bidder is approved by this Court as the Successful Bidder (as defined below), (ii) approving the bidding procedures and bid protections attached hereto as **Exhibit 1** (the "*Bidding Procedures*"), (iii) scheduling an auction of The 800 Building (the "*Auction*") and a hearing (the "*Sale Hearing*") to approve the results of Auction and the sale of The 800 Building free and clear of all liens, claims, encumbrances, and interests (the "*Sale*"), (iv) approving the form and manner of notice of the Auction and the Sale attached to the Motion as Exhibit C (the "*Sale Notice*"), (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "*Contracts*"), and (vi) granting related relief; and (b) at the conclusion of the Sale Hearing, an order substantially in the form attached to the Motion as Exhibit D (the "*Sale Order*") (i) approving a purchase and sale agreement for the Sale, (ii) approving the results of the Auction and authorizing the Sale of The 800 Building to the Successful Bidder, (iii) authorizing the assumption and assignment of the Contracts, and (iv) granting related relief; and the Court having considered the Motion and all pleadings associated with that motion; and upon the arguments of counsel and the evidence presented at the hearing on the Sale Procedures Motion; and after due deliberation and sufficient cause therefor,

**THE PARTIES STIPULATE THAT:**

     A.    Capitalized terms not otherwise defined in this order shall have the respective meanings attributed to such terms in the Motion.

AM 50314407.5

2

B.      This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      The Sale of The 800 Building will be subject to higher and better offers, if any, and the opportunity for public auction and sale, free and clear of all liens, claims, encumbrances, and interests.

D.      In connection with the Stalking-Horse Purchase Agreement, Purchaser has submitted a deposit of $1.1 million in the aggregate, $100,000 with the Debtor and $1 million of which is presently held in escrow, (collectively, the "*Deposit*").

E.      The Stalking-Horse Purchase Agreement provides that the Stalking-Horse Bidder is entitled to receive a break-up fee of $618,000 (the "*Break-Up Fee*"), plus reimbursement of out-of-pocket costs, including attorneys' fees, not to exceed $50,000 (the "*Expense Reimbursement*" and, together with the Break-Up Fee, the "*Stalking-Horse Protections*"), if The 800 Building is ultimately sold to a party other than the Stalking-Horse Bidder pursuant to an Alternative Transaction, in consideration of Stalking-Horse Bidder having negotiated the Stalking-Horse Purchase Agreement and the transactions contemplated therein, and conducting due diligence related to the Stalking-Horse Purchase Agreement and The 800 Building. As used in this Order, an "*Alternative Transaction*" means the sale, transfer, lease (other than leases to tenants in the ordinary course of the Debtor's business) or other disposition of The 800 Building, whether directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction or series of transactions with one or more persons or entities, other than to the Stalking-Horse Purchaser (or the Stalking-Horse Purchaser's successor in interest) or other than pursuant to the Stalking-Horse Agreement.

AM 50314407.5

3

F.      The Stalking-Horse Bidder has expended, and likely will continue to expend, considerable time and substantial money and energy pursuing the Sale and has engaged in extended due diligence and good-faith prepetition negotiations with the Debtor.   The Stalking-Horse Purchase Agreement is the culmination of these efforts.

G.      The Debtor and the Stalking-Horse Bidder have represented to the Court that approval of the Stalking-Horse Protections will benefit the Debtor's estate because: (1) the Stalking-Horse Protections were a material inducement for, and a condition of, the Stalking-Horse Bidder's willingness to amend the Stalking-Horse Purchase Agreement to provide for a public sale; (2) the Stalking-Horse Bidder is unwilling to act as the stalking-horse bidder without the Stalking-Horse Protections; (3) by having Stalking-Horse Bidder as a stalking-horse for the Sale, much of the due diligence, contract negotiation and other work necessary to submit a bid for The 800 Building will have been completed.   This will shorten the time and lessen the cost required for prospective bidders to submit a Competing Bid (as defined below) and will therefore promote such bids; (4) the sale of The 800 Building without a stalking-horse bidder would be more time-consuming, more expensive and likely would result in a reduced prospect for competitive bids.

H.      The Debtor and the Stalking-Horse Bidder have further represented to the Court that the Stalking-Horse Protections were negotiated by the parties in good faith and at arms' length, and that they are fair and reasonable in view of, among other things, (1) the intensive analysis, due diligence investigation, and negotiation undertaken by the Stalking-Horse Bidder in connection with the Sale, and (b) the fact that Stalking-Horse Bidder's efforts have increased the chances that the Debtor will maximize the value of The 800 Building by establishing a bid standard and minimum for other bidders, placing The 800 Building in a sale mode thereby

potentially attracting other bidders to an auction, and serving as a catalyst for other potential or actual bidders for The 800 Building, to the benefit of the estate, its creditors and all other parties in interest.

        I.      Finally, the Debtor and the Stalking-Horse Bidder have represented to the Court that time is of the essence to complete the Sale because the Stalking-Horse Bidder's financing commitment expires on June 15, 2015 and the Debtor will be required to pay a $500,000 forbearance fee if its first-lien debt is not repaid by June 30, 2015.

        J.      Upon the initial presentment of the Motion in open court, the Debtor and the Stalking-Horse Bidder have represented that (a) the Debtor has conferred with the Office of the U.S. Trustee (the "*U.S. Trustee*"), and (b) the Debtor and the Stalking-Horse Bidder have agreed to the following changes to the relief requested in the Motion:

        a.      The Stalking-Horse Bid Protections shall be limited to just a $600,000 Break-Up Fee; and

        b.      The Bidding Procedures have been revised from the form attached to the Motion as follows:

        i.      The Bid Deadline has been extended to June 8, 2015, at 12:00 p.m. Central Time;

        ii.      The Auction, if any, shall be scheduled for June 8, 2015, at 2:00 p.m. Central Time; and

        iii.      The Sale Hearing shall be scheduled for June 9, 2014, at 11:00 a.m. Central Time.

K.      Counsel for the U.S. Trustee has represented to the Court at the initial presentment of the Motion that, with the foregoing changes, the U.S. Trustee does not object to the entry of this Order.

L.      Notice of the Motion for the purposes of initial presentment and entry of this Bidding Procedures Order was appropriate under the circumstances, and no further notice is necessary or required.

M.      Based upon the forgoing, good and sufficient cause exists for the entry of this Bidding Procedures Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.      The Motion is hereby granted as set forth below.

2.      The Bidding Procedures are approved and shall apply to the Sale of The 800 Building.

3.      The Stalking-Horse Protections are limited to a $600,000 Break-Up Fee only and are approved as set forth below.  In the event the Stalking-Horse Purchase Agreement is terminated due to this Court approving the Sale of The 800 Building in an Alternative Transaction, the Stalking-Horse shall be entitled to receive the $600,000 Break-Up Fee.  Subject to the closing of the Alternative Transaction, the Debtor shall: (a) return to the Stalking-Horse Bidder the $100,000 of Deposit held by the Debtor; (b) direct the escrow agent jointly with the Stalking-Horse Bidder to refund the $1 million of the Deposit held by the escrow agent to the Stalking-Horse Bidder; and (c) pay to the Stalking-Horse Bidder the Break-Up Fee.  Payment of the Expense Reimbursement shall be subject to application before this Court by either the Stalking-Horse Purchaser or the Debtor.  The Deposit and the Break-Up Fee shall be paid to

AM 50314407.5

6

Purchaser within one (1) business day of the closing of an Alternative Transaction as an allowed administrative expense claim in the Bankruptcy Case pursuant to Section 503(b)(1) of the Bankruptcy Code, which shall have priority over every other claim allowable under such subsection.

4.    In the event (a) the Debtor is unable or unwilling to perform under or otherwise breaches the terms of the Stalking-Horse Purchase Agreement or (b) the Stalking-Horse Bidder elects to extend the Closing Date for an additional 60 days under the terms of the Stalking-Horse Purchase Agreement and the Bankruptcy Court does not enter the Sale Order after the expiration of such extended Closing Date, then the Stalking-Horse Bidder shall have the right to terminate the Stalking-Horse Purchase Agreement, in which event the Debtor shall refund the $100,000 Deposit and cause the Escrow Agent to Refund the $1,000,000 Deposit within 1 business day after the Stalking-Horse Bidder's termination.

5.    The following procedures shall apply with respect to executory contracts and/or unexpired leases that are proposed to be assumed and assigned pursuant to the Purchase Agreement (collectively the "*Contracts*"):

a.    Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure cost amount, if any, as set forth in the Notice of Sale and Assumption and Assignment of Contracts (the "*Assumption*"), or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses, whether monetary or nonmonetary (including accrued but not yet due obligations) must be cured or satisfied under any of the Contracts in order for such contract or lease to be assumed and/or assigned (collectively, a "*Cure Cost*"), must file and serve an objection (an "*Assumption/Assignment Objection*") so that such Assumption/Assignment Objection is docketed and received by the Service Parties not later than the Bid Deadline (the "*Assumption/Assignment Objection Deadline*").

b.    An Assumption/Assignment Objection must set forth with specificity any and all Cure Costs which such party asserts must be cured or satisfied in connection with the assumption and assignment of such Assumed Contract; provided, however, that any party to an Assumed Contract shall retain the right to object solely with respect to adequate assurance of future performance until the Sale Hearing only if such objection was raised in an Assumption/Assignment Objection on or prior to the

AM 50314407.5

7

Assumption/Assignment Objection Deadline. An Assumption/Assignment Objection shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions (whether monetary or nonmonetary to assumption and assignment, and the support therefor, and all other objections to assumption and assignment.

c.      Unless an Assumption/Assignment Objection is filed and served by the Assumption/Assignment Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure cost and to have otherwise consented to the assumption and assignment and shall be forever barred and estopped from asserting or claiming against the Debtor, the purchaser of The 800 Building, or any other assignee of the relevant Assumed Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such contract for the period prior to the Closing Date. Upon entry of the Sale Order and Closing of the sale of The 800 Building, each non-debtor party to each Assumed Contract will be required to fully perform all duties and obligations arising under such Assumed Contract, according to its terms.

d.      Hearings with respect to any Assumption/Assignment Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Court may designate; provided that the subject Assumed Contract may be assumed and assigned prior to resolution of any Assumption/Assignment Objection if the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) is deposited by the Debtor to be held in a segregated account maintained by the Debtor or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

e.      The Debtor will serve the Assumption Notice on all parties to the Contracts.

6.      The proposed form of Assumption Notice attached to the Motion as Exhibit G is hereby approved, and the Debtor is authorized to serve, via first-class U.S. mail, the Assumption Notice, and no other notice is necessary or required with respect to the assumption and assignment of the Contracts.

7.      In the event the party who submits the highest and best bid for The 800 Building fails to close on the sale through no fault of the Debtor, such party's earnest money deposit shall be forfeited to the Debtor.

8.      Stalking-Horse Bidder's right to the Break-Up Fee and return of the Deposit, under the terms and conditions set forth in the Stalking-Horse Purchase Agreement, is hereby

AM 50314407.5

deemed to be an allowed administrative expense claim against the estate under section 503(b) of the Bankruptcy Code with priority over every other claim allowable under such subsection. The Debtor is authorized and directed to immediately pay the Break-Up Fee if and when the Debtor's obligation arises thereunder, without any other or further notice or order of this Court. The Debtor's obligation to pay the Break-Up Fee: (a) shall survive termination of the Stalking-Horse Purchase Agreement, according to the terms thereof; and (b) shall be binding on any successor to the Debtor, including any trustee subsequently appointed in this case.

9.     The Debtor's and the Stalking-Horse Bidder's rights to the Deposit shall be governed by this Bidding Procedures Order. If the Stalking-Horse Purchase Agreement is terminated, the Deposit shall be released to the Stalking-Horse Bidder or the Debtor in accordance with the terms of the Stalking-Horse Purchase Agreement and this Bidding Procedures Order without further notice or order of the Court (and the automatic stay under section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit such release and any actions that may be necessary or proper for any party to take to effectuate such release in accordance with the terms of the Stalking-Horse Purchase Agreement).

10.     This Court retains jurisdiction over any matters related to or arising from: (a) the implementation of this Bidding Procedures Order; and (b) the Stalking-Horse Purchase Agreement and all related agreements.

11.     The Debtor is hereby authorized and empowered to take such steps and do such other things as may be necessary to implement and effect the terms and requirements established by this Bidding Procedures Order.

12.     The Sale Hearing to consider approval of the Sale to the Successful Bidder shall take place on June 9, 2015, at 11:00 a.m. Central Time.

AM 50314407.5

Enter:

_____

United States Bankruptcy Judge

Dated: **MAY 2 1 2015**

**Prepared by:**
David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-201-2000
Facsimile: 312-201-2555
david.fischer@lockelord.com
phillip.nelson@lockelord.com

### Exhibit 1

**Bidding Procedures**

AM 50314407.5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[1] | Case No. 15-17314 |
| Debtor. | Hon. Pamela S. Hollis |

## BIDDING PROCEDURES FOR THE SALE OF THE 800 BUILDING

On May 21, 2015, the United States Bankruptcy Court for the Northern District of Illinois (the "*Court*") entered the *Order (A) Approving 800 City Apartments LLC as the Stalking-Horse Bidder in Connection with the Sale of the Debtor's Real Property Commonly Known as The 800 Building, Located in Louisville, Kentucky, (B) Approving Bidding Procedures and Bid Protections, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief* (the "***Bidding Procedures Order***"), by which the Court approved the following procedures (the "***Bidding Procedures***").

These Bidding Procedures set forth the process by which the Debtor is authorized to conduct an auction (the "***Auction***") for the sale (the "***Sale***") of Debtor's apartment building located at 800 South 4th Street, Louisville, Kentucky ("***The 800 Building***" or the "***Property***") as more particularly described in and pursuant to the Proposed Purchase Agreement (as defined in the Bidding Procedures Order).[2]

## A. As-Is, Where-Is

The proposed transfer of any of The 800 Building will be on an "as-is, where-is" basis and without representations or warranties of any kind, nature, or description by the Debtor, other than those set forth in the Proposed Purchase Agreement (as defined in the Bidding Procedures Order). All of the applicable Debtor's right, title, and interest in and to The 800 Building will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, *lis pendens*, and interests in accordance with section 363(f) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), except as otherwise agreed by the Debtor.

---

[1]   Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596. The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

[2]   Capitalized terms used as defined terms herein and not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures Order.

Each Bidder for The 800 Building will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct due diligence regarding The 800 Building prior to making its Bid; (b) has relied solely upon its own independent review, investigation, and inspection of any document including, without limitation, executory contracts and unexpired leases, in making its Bid; and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to The 800 Building, or the completeness of any information provided in connection with the Sale or the Auction.

## B.   Bid Requirements

Any proposal, solicitation, or offer (each, a "*Bid*") by a person interested in The 800 Building (such person who submits a Bid, a "*Bidder*") other than the Stalking-Horse Bid must be submitted in writing and determined by the Debtor, in its reasonable business judgment, to have satisfied the following requirements (collectively, the "*Bid Requirements*"):

(a)   *The Assets*: Competing Bids must be for The 800 Building and all of the Contracts;

(b)   *Bid Requirements*: Any Bid (other than the Stalking-Horse Bid, as defined herein) must be submitted in writing no later than the Bid Deadline and determined by the Debtor, in its reasonable business judgment, to have satisfied the following requirements:

    i.   *Purchase Price*: Each Bid must clearly set forth the purchase price to be paid in cash. The Purchase Price must exceed the Stalking-Horse Bid by at least $982,000, reflecting an overbid of $382,000 (or 1.8% of the $20,650,000 Proposed Purchase Price, plus the $600,000 Break-Up Fee).

    ii.   *Stalking-Horse Bid*: The "Stalking-Horse Bidder" is 800 City Apartments LLC, a Delaware limited liability company. The Debtor and the Stalking-Horse Bidder have entered into the Purchase and Sale Agreement dated December 31, 2014, as amended (the "*Purchase Agreement*"), which is attached as Exhibit A to the Bidding Procedures Order. The Purchase Agreement is the *Stalking-Horse Bid*.

    iii.   *Deposit*: Each Bid must be accompanied by a cash deposit in the amount equal to $1 million to be held in a non-interest-bearing escrow account to be identified and established by the Debtor (the "*Deposit*").

    iv.   *Purchase and Sale Agreement*: Each Bid must expressly include an asset purchase agreement with a blackline clearly marked to show changes requested by the Bidder against the Proposed Purchase Agreement.

    v.   *Same or Better Terms*: Except as otherwise provided in the Bidding Procedures, each Bid must be, in the Debtor's reasonable business judgment, substantially on the same or better terms that the terms of the

2

Proposed Purchase Agreement. Each Bid must include duly executed transaction documents necessary to effectuate the Sale (the "*Bid Documents*").

vi. *Demonstrated Financial Capacity, Committed Financing*: A Bidder must have, in the Debtor's reasonable business judgment, the necessary financial capacity to consummate the proposed transactions required by the Bid. Each Bid must also include committed financing, documented to the Debtor's reasonable satisfaction, that demonstrates the Bidder has received sufficient debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid, including without limitation, the identity and the contact information of the specific person(s) or entity(s) responsible for such committed financing whom the Debtor should contact regarding such committed financing. Such funding commitments shall not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtor in its business judgment.

vii. *Identity*: Each Bidder must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such), and the complete terms of such participation. Under no circumstances may any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) whom the Debtor should contact regarding such Bid.

viii. *Contingencies, No Financing or Diligence Outs*: A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtor's reasonable business judgment, than those set forth in the Proposed Purchase Agreement.

ix. *Irrevocable*: A Bidder's Bid shall be irrevocable unless and until the Debtor except a higher Qualified Bid (as defined herein) and such Bidder is not selected as the Backup Bid (as defined herein).

x. *Expenses*: Each Bidder presenting a Bid or Bids shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction.

xi. *Authorization*: Each Bid must contain evidence that the Bidder has obtained authorization or approval from its Board of Directors (or a comparable governing body acceptable to the Debtor) with respect to the submission of its Bid and the consummation of the transaction contemplated in such Bid.

xii. *As-Is, Where-Is*: Each Bid must include a written acknowledgment and representation that the Bidder: (A) has had an opportunity to conduct any and all due diligence regarding The 800 Building prior to making its offer; (B) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or The 800 Building in making its Bid; and (C) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law, or otherwise, regarding The 800 Building for the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's proposed Purchase and Sale Agreement.

xiii. *Offer to Remain Open*: Each Bid must specify that it shall remain open for at least sixty (60) days.

## C.    Bid Deadline

Each Bid must be transmitted via e-mail (in .pdf or similar format) so as to be *actually received* on or before **June 8, 2015 at 12:00 p.m. Central Time** (the "*Bid Deadline*") by each of the following parties (the "*Notice Parties*"):

(a)    proposed counsel for the Debtor, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, Attn: David J. Fischer and Phillip W. Nelson (david.fischer@lockelord.com; phillip.nelson@locklord.com); and

(b)    the office of the United States Trustee for the Northern District of Illinois, 219 S. Dearborn St., Chicago, Illinois 60604, Attn.: Patrick S. Layng and Kathryn M. Gleason (USTPRegion11.ES.ECF@usdoj.gov; kathryn.m.gleason@usdoj.gov).

## D.    Qualified Bidders

(a)    A Bid that satisfies each of the Bid Requirements, as determined in the Debtor's reasonable business judgment, shall constitute a "*Qualified Bid*," and such Bidder shall be a "*Qualified Bidder*." The Debtor shall notify each Qualified Bidder that such party is a Qualified Bidder the day of the Bid Deadline.

(b)    If any Bid is determined by the Debtor not to be a Qualified Bid, the Debtor shall cause such Bidder to be refunded its Deposit and all accumulated interest thereon on or within five (5) business days after the Bid Deadline.

(c)    Between the time that the Debtor notifies a Bidder that it is a Qualified Bidder

and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in the Bidder's proposed Purchase and Sale Agreement(s), without the written consent of the Debtor, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified herein. Any Qualified Bid may be improved at the Auction as set forth herein, but any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth herein.

**E.     Auction**

If one or more Qualified Bids are submitted, the Debtor will conduct the Auction to determine the Successful Bidder(s) with respect to the applicable Property. If no Qualified Bids other than the Stalking-Horse Bid are submitted, the Auction shall be canceled. If the Auction is canceled, the Stalking-Horse Bidder shall be designated as the Successful Bidder.

No later than **June 8, 2015 at 1:00 p.m. Central Time**, the Debtor will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtor's reasonable business judgment (the "***Baseline Bid***"), and provide copies of the applicable Bid Documents supporting such Baseline Bid(s) to each Qualified Bidder. The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Successful Bid(s) for The 800 Building shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid(s) to the Debtor's estates, including, *inter alia*: (a) the number, type, and nature of any changes to the applicable Purchase and Sale Agreement requested by the Qualified Bidder, including the obligations to be assumed in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "***Bid Assessment Criteria***").

The Auction shall take place at **2:00 p.m. Central Time on June 8, 2015**, at the offices of Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, or such later date and time as selected by the Debtor in consultation with the Stalking-Horse Bidder. When conducted, the Auction shall be conducted in a timely fashion according to the following procedures:

**(a)     The Debtor Shall Conduct the Auction.**

The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid(s) for The 800 Building. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders for The 800 Building. The Debtor shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Successful Bid(s). Only Qualified Bidders and their legal and financial advisors shall be entitled

to attend the Auction, and the Qualified Bidders shall appear in person and through duly-authorized representatives at the Auction.

**(b)   Terms of Overbids**

"*Overbid*" means any Bid made at the Auction by a Qualified Bidder subsequent to the Debtor's announcement of the Baseline Bid(s). Each Overbid must comply with the following conditions:

      **(i)**      **Minimum Overbid Increment.** All Overbids at the Auction shall initially be in minimum increments of $250,000 in cash. For the avoidance of doubt, any Bidder may submit an Overbid that is greater than $250,000 in cash.

      **(ii)**      **Stalking-Horse Bidder Overbids.** The Stalking-Horse Bidder may make Overbids, using the amount of the Break-Up fee as a credit toward the amount of purchase price the Stalking-Horse Bidder would pay.

      **(iii)**      **Overbid Alterations.** An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtor's estate than any prior Qualified Bid or Overbid, as determined in the Debtor's reasonable business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

      **(iv)**      **Announcing Overbids.** The Debtor shall announce at the Auction the material terms of each Overbid, the basis, whether subjective or objective, for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtor's estate based on, *inter alia*, the Bid Assessment Criteria.

During the course of the Auction, the Debtor shall, after the submission of each Overbid, promptly inform each Qualified Bidder which Overbid reflects, in the Debtor's view, the highest or otherwise best Bid.

**(c)   Closing of the Auction**

      **(i)**      The Auction shall continue until the Debtor determines in its reasonable business judgment, that it has obtained the highest or otherwise best Qualified Bid (such Qualified Bid, the "*Successful Bid*" and such Qualified Bidder, the "*Successful Bidder*"), at which point, the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid(s). Such acceptance by the Debtor of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

(ii)    For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtor from exercising its fiduciary duties under applicable law.

(iii)   The Debtor shall not consider any Bids or Overbids submitted after the conclusion of the Auction and any and all such Bids and Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(iv)    As soon as reasonably practicable after closing the Auction, the Debtor shall cause the Bid Documents for the Successful Bid(s) and Backup Bid(s) to be filed with the Court.

**(d)    No Collusion; Good-Faith, Bona Fide Offer**

Each Qualified Bidder participating at the Auction will be required to confirm on the record that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**F.    Backup Bidder**

(a)    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder(s) with the next-highest or otherwise second-best Qualified Bid at the Auction, as determined by the Debtor in the exercise of its reasonable business judgment, shall be required to serve as a backup bidder (the "*Backup Bidder*").

(b)    The identity of the Backup Bidder(s) and the amount and material terms of the Qualified Bid(s) of the Backup Bidder(s) shall be announced by the Debtor at the conclusion of the Auction at the same time the Debtor announces the identity of the Successful Bidder(s). The Backup Bidder(s) shall be required to keep its or their Qualified Bid(s) (or if the Backup Bidder(s) submitted one or more Overbids at the Auction, its final Overbid(s)) open and irrevocable until the closing of the transaction with the Successful Bidder(s). The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder.

(c)    If a Successful Bidder fails to consummate an approved transaction contemplated by its Successful Bid, the Debtor may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtor will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtor, and the Trustee specifically reserves the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

**G.    Highest or Otherwise Best Bid**

AM 50316180.4

7

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor may, in its sole discretion, consider the following factors in addition to any other factors that the Debtor deems appropriate: (a) the number, type, and nature of any changes to the applicable Purchase and Sale Agreement requested by the Qualified Bidder; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtor's estates from the transaction contemplated by the Bid Documents; and (e) the tax consequences of such Qualified Bid.

**H.     Reservation of Rights**

The Debtor reserves its rights to modify these Bidding Procedures, in its reasonable business judgment, and with the consent of the Stalking-Horse Bidder, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of The 800 Building, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing (as defined below) in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the Minimum Overbid Increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis.

**I.     Consent to Jurisdiction**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Bid Documents, as applicable.

**J.     Sale Hearing**

A hearing to consider approval of the Sale to the Successful Bidder(s) (the "*Sale Hearing*") is presently scheduled to take place on **June 9, 2015 at 11:00 a.m. Central Time,** or as soon thereafter as counsel may be heard, before the Honorable Pamela S. Hollis in Courtroom 644, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other judge who may be sitting in her place and stead. The Sale Hearing may be adjourned by the Court without further notice other than by announcement in open court or on the Court's calendar. At the Sale Hearing, the Debtor shall present the Successful Bid(s) to the Court for approval.

**K.     Return of Deposit**

The Successful Bidder's Deposit, if any, shall be applied to the purchase price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtor in its sole discretion and shall be returned (other than with respect to any Successful Bidder or Backup Bidder) on or

AM 50316180.4

8

within five (5) business days after the Auction.  Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtor will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtor as damages, without limiting any and all rights, remedies, and/or causes of action that may be available to the Debtor, and the Debtor shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

**L.     Modification of Bidding Procedures**

Except as provided by Section H hereof, these Bidding Procedures may not be modified except with the Debtor's and the Stalking-Horse Bidder's express written consent.

AM 50316180.4

9