**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[1] | Case No. 15-17314 |
| Debtor. | Hon. Jacqueline P. Cox |

**NOTICE OF MOTION**

TO: See attached Service List

  **PLEASE TAKE NOTICE** that on **Tuesday, November 7, 2017 at 9:30 a.m. Central Time**, or as soon thereafter as counsel may be heard, the undersigned will appear before United States Bankruptcy Judge Jacqueline P. Cox, or any other judge sitting in her stead, in Courtroom 680 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present the attached *Second Interim and Final Application of Locke Lord LLP, Counsel to The 800 Building, LLC, as Debtor and Debtor in Possession, for Allowance of Compensation and Reimbursement of Expenses for the Period from May 15, 2015, to and Including January 28, 2016,* a copy of which is hereby served upon you, at which time and place you may appear as you see fit.

Dated: October 16, 2017

           **LOCKE LORD LLP**

           By:  */s/Phillip W. Nelson*
                An Attorney of the Firm

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Counsel to The 800 Building, LLC*

---

[1]  Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596. The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

## <u>Service List</u>

**Via First Class U.S. Mail**

2006 Heyburn Building, LLC
Attn:  Leon Petcov, Manager
332 W. Broadway
Louisville, KY  40203

Chase Environmental Group, Inc.
Attn: Michael Mills, Reg'd Agent
11450 Watterson Ct.
Louisville, KY  40299

Commercial Management, LLC
Attn:  Leon Petcov, Manager
332 W. Broadway, Ste. 201
Louisville, KY  40203

Department of the Treasury
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Evens Time, Inc.
Attn: Earl Mullins Jr., Reg'd Agent
1012 South Forth St.
Louisville, KY  40203

Fine Homes, LLC
Attn: Alex Loyfman, Reg'd Agent
4117 W. Oakton
Skokie, IL  60076

International Bank of Chicago
Attn: John Benson, Exec. VP & COO
1210 Central Avenue
Wilmette, IL  60091

IPFS Corporation
Attn: Corp. Service Co., Reg'd Agnt
421 W. Main Street
Frankfort, KY  40601

JBS & Assocs. Accnts and Consltants
Attn: Jeffrey B. Stolberg, Pres.
3700 W. Devon Ave., Ste. E
Lincolnwood, IL  60712

Kentucky Department of Revenue
Legal Branch - Bankruptcy Section
P.O. Box 5222
Frankfort, KY  40602

Louisville Gas & Electric
P.O. Box 9001960
Louisville, KY  40290-1960

Louisville Water Company
Attn: Barbara Dickens, Reg. Agnt
550 S. 3rd St.
Louisville, KY  40202

Matherly Land Consultants, PPLC
Attn: Al Matherly, Reg'd Agent
1302 Tycoon Way
Louisville, KY  40213

Rentpath, Inc.
Attn: C T Corp. Sys., Reg'd Agent
1201 Peachtree St, NE
Atlanta, GA  30361

Republic Bank of Chicago
Attn: Loan Operations
2221 Camden Ct., Fl. 1
Oak Brook, IL  60523

Rumpke of Kentucky, Inc.
Attn: C T Corp. Sys., Reg'd Agent
306 W. Main St., Suite 512
Frankfort, KY  40601

The Murphy Elevator Co.
Attn: D. Gregory Carlisle, Reg. Agt
128 E. Main St.
Louisville, KY  40202

Tikijian Associates
Attn: George Tikijian, President
3755 E. 82nd St., Ste. 265
Indianapolis, IN  46240

Wyatt, Tarrant & Combs, LLP
Attn: Michael Vincenti, Partner
500 W Jefferson St., Ste. 2800
Louisville, KY  40202

Louisville Gas & Electric
Attn: Registered Agent
220 West Main Street
Louisville, KY  40202

800 City Apartments LLC
c/o Jonathan R. Borenstein, Partner
Honigman Miller Schwartz and Cohn LLP
39400 Woodward Avenue, Suite 101
Bloomfield Hills, MI  48304-5151

International Bank of Chicago
C/O: Michael Lee Tinaglia &
J. Molly Wretsky
Law Offices of Michael Lee Tinaglia
444 N. Northwest Hwy., Suite 350
Park Ridge, Illinois 60068

1st Equity Bank Northwest
C/O: Daniel Lynch & Amy Hansen
Lynch Stern Thompson LLP
150 South Wacker Drive, Suite 2600
Chicago, Illinois 60606

Office of the United States Trustee
Attn: Kathryn M. Gleason
219 S. Dearborn St., Room 873
Chicago, Illinois 60604

Fine Homes, LLC
C/O: Richard E. Steck & Jody Rosenbaum
Richard E. Steck & Associates
140 S. Dearborn St., Suite 1610
Chicago, Illinois 60603

Fine Homes, LLC
C/O: Michael A. Valenti
Valenti Hanley & Robinson, PLLC
401 W. Main St., Ste. 1950
Louisville, Kentucky 40202

Fine Homes, LLC
C/O: Daniel J. Voelker
Voelker Litigation Group
311 West Superior St., Ste. 500
Chicago, Illinois 60654

Fine Homes, LLC
C/O: Gregory J. Jordan
Jordan & Zito LLC
55 West Monroe Street, Suite 3600
Chicago, Illinois 60603

Illinois Department of Revenue
Bankruptcy Section
P.O. Box 64338
Chicago, Illinois 60664-0338

U.S. Environmental Protection Agency
Richard L. Nagle – Bankruptcy Contact
US EPA Region 5
Mail Code: C-14J
Chicago, Illinois 60604

Kentucky Department of Environmental
Protection
c/o Ron Lovitt, Supervisor
Division of Waste Management
200 Fair Oaks Lane
Frankfort, Kentucky 40601

United States Attorney's Office
Northern District of Illinois,
Eastern Division
219 S. Dearborn St., 5th Floor
Chicago, Illinois 60604

Attorney General of Kentucky
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601-3449

AM 57328314.3

**Via Electronic Case Filing System Service**

- Judy B Calton on behalf of Creditor 800 City Apartments, LLC
  jcalton@honigman.com

- Edward P. Freud on behalf of Creditor Republic Bank of Chicago
  epfreud@rfbnlaw.com

- Mary L Fullington on behalf of Creditor Wyatt, Tarrant & Combs, LLP
  lexbankruptcy@wyattfirm.com

- Gregory J Jordan on behalf of Creditor Fine Homes LLC
  gjordan@jz-llc.com

- Patrick S Layng
  USTPRegion11.ES.ECF@usdoj.gov

- Daniel F Lynch on behalf of Other Prof. 1st Equity Bank Northwest
  dlynch@lstllp.com, docketing@lstllp.com

- Phillip W. Nelson on behalf of Debtor The 800 Building, LLC
  phillip.nelson@lockelord.com, karen.soto@lockelord.com;
  ChicagoDocket@lockelord.com

- Michael Lee Tinaglia on behalf of Creditor International Bank of Chicago
  mltinaglia@tinaglialaw.com, jmwretzky@tinaglialaw.com

- Mark R Zito on behalf of Creditor Fine Homes LLC
  mzito@jz-llc.com

- Amy J. Hansen on behalf of Creditor 1st Equity Bank Northwest
  ahansen@lstllp.com

## Certificate of Service

I, Phillip W. Nelson, an attorney, certify that, on October 16, 2017, I caused a copy of (a) the foregoing *Notice of Motion* and (b) the related *Second Interim and Final Application of Locke Lord LLP, Counsel to The 800 Building, LLC, as Debtor and Debtor in Possession, for Allowance of Compensation and Reimbursement of Expenses for the Period from May 15, 2015, to and Including January 28, 2016* to be served on the foregoing Service List via first class U.S. mail and via the Court's ECF System on those parties entitled to electronic service on the date hereof.

Date: October 16, 2017          */s/Phillip W. Nelson*

Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
phillip.nelson@lockelord.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[1] | Case No. 15-17314 |
| Debtor. | Hon. Jacqueline P. Cox |

**COVER SHEET FOR SECOND INTERIM AND FINAL APPLICATION**
**OF LOCKE LORD LLP, COUNSEL TO THE 800 BUILDING, LLC,**
**AS DEBTOR AND DEBTOR IN POSSESSION, FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD FROM MAY 15, 2015, TO AND INCLUDING JANUARY 28, 2016**

| | |
|---|---|
| Name of Applicant: | Locke Lord LLP |
| Authorized to provide professional services to: | The 800 Building, LLC, Debtor and Debtor in Possession |
| Date of retention: | Order entered on July 7, 2015, *nunc pro tunc* to May 15, 2015 |
| Period for which compensation and reimbursement is sought: | May 15, 2015 to and including January 28, 2016 |
| Amount of compensation sought as actual, reasonable, and necessary: | $228,393.50 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $3,810.32 |
| Total compensation and expense reimbursement requested: | $232,203.82 |

This is a __ monthly __ interim _X_ final application.

---

[1]   Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596.  The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

AM 57328314.3

## Summary of Hours Billed by Attorneys and Paraprofessionals During the Fee Period

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $745.00 | 54.70 | $9,610.50 |
| | | | | $775.00 | 7.60 | $5,890.00 |
| Gina M. Gamal | Partner | 2006 | Real Estate | $570.00 | 1.30 | $741.00 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 249.50 | $34,079.00 |
| | | | | $585.00 | 36.30 | $20,358.00 |
| Jennifer R. Garner | Associate | 2008 | Real Estate | $565.00 | 15.90 | $8,983.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 41.40 | $3,395.00 |
| | | | | $385.00 | 5.30 | $1,578.50 |
| Stephen J. Humeniuk | Associate | 2013 | Restructuring | $340.00 | 5.40 | $1,836.00 |
| Michael J. Conroy | Associate | 2015 | Tax | $330.00 | 0.50 | $165.00 |
| **Total** | | | | | **417.90** | **$228,368.00** |

| Paraprofessional | Position | Department | Rate | Hours | Total |
|---|---|---|---|---|---|
| Jeannie Ha | Paralegal | Business Law | $255.00 | 0.10 | $25.50 |
| **Sub-Total** | | | | **0.10** | **$25.50** |

| **Total** | | | | | **418.00** | **$228,393.50** |

## Summary of the Total Amount of Fees and Expenses Incurred Under Each Subject Matter During the Fee Period

| Matter Number | Matter Description | Hours | Fees | Expenses | Total |
|---|---|---|---|---|---|
| 1 | Chapter 11 Bankruptcy Filing | 4.50 | $2,385.00 | $142.80 | $2,527.80 |
| 2 | Sale of The 800 Building | 102.90 | $57,726.50 | $349.21 | $58,969.71 |
| 3 | Plan, Disclosure Statement, and Exit Planning | 156.50 | $86,636.50 | $3,318.31 | $89,954.81 |
| 4 | Secured Creditor Issues and Negotiations | 27.40 | $16,081.50 | $0.00 | $16,081.50 |
| 5 | Case Administration | 22.70 | $11,910.00 | $0.00 | $11,910.00 |
| 6 | Unsecured Creditor Issues and Negotiations | 20.70 | $13,810.50 | $0.00 | $13,810.50 |
| 7 | Monthly Operating Reports, Schedules, and Statement of Financial Affairs | 17.70 | $9,098.50 | $0.00 | $9,098.50 |
| 8 | Locke Lord Retention Issues | 36.80 | $17,796.00 | $0.00 | $17,796.00 |

AM 57328314.3

| 9 | Professional Retention Issues (non-Locke Lord) | 28.80 | $12,949.00 | $0.00 | $12,949.00 |
| **Totals** | | **418.00** | **$228,393.50** | **$3,810.32** | **$228,393.50** |

Dated: October 16, 2017

**LOCKE LORD LLP**

By:  _/s/Phillip W. Nelson_
      An Attorney of the Firm

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
david.fischer@lockelord.com
phillip.nelson@lockelord.com
_Counsel to The 800 Building, LLC_

AM 57328314.3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[1] | Case No. 15-17314 |
| Debtor. | Hon. Jacqueline P. Cox |

**SECOND INTERIM AND FINAL APPLICATION
OF LOCKE LORD LLP, COUNSEL TO THE 800 BUILDING, LLC,
AS DEBTOR AND DEBTOR IN POSSESSION, FOR ALLOWANCE
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD FROM OCTOBER 1, 2015, TO AND INCLUDING JANUARY 31, 2016**

Locke Lord LLP ("***Locke Lord***"), counsel to The 800 Building, LLC, the above-captioned debtor and debtor in possession, (the "***800 Building Debtor***" or the "***Debtor***") submits this second interim and final fee application (this "***Final Application***") and states as follows:

<u>**Relief Requested**</u>

1.     By this Application, Locke Lord respectfully requests that this Court enter an order substantially in the form attached hereto (the "***Proposed Order***") awarding Locke Lord compensation for professional services rendered to the 800 Building Debtor and for reimbursement of actual and necessary expenses incurred in connection with such services from May 15, 2015, to and including January 28, 2016 (the "***Fee Period***") pursuant to sections 327, 330, and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Rule 5082-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Northern District of Illinois (the "***Local Rules***").

---

[1]     Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtor's federal tax identification number are: 2596.  The location of the Debtor's place of business is 800 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

2.       In this Final Application, Locke Lord requests (a) allowance and approval of compensation for professional services rendered to the 800 Building Debtor in the aggregate amount of $228,393.50 and (b) reimbursement of actual and necessary expenses in the amount of $3,810.32 incurred by Locke Lord in rendering such services during the Fee Period, on a final basis.  In support of this Final Application, Locke Lord respectfully states as follows.

3.       Locke Lord has previously filed one interim application for professional compensation with this Court, the First Interim Fee Application, and the Court approved that application and authorized the 800 Building Debtor to pay Locke Lord $141,779.50 for professional fees and $443.26 for the reimbursement of expenses incurred by Locke Lord during the first fee period pursuant to the First Fee Order (defined below).  Locke Lord now seeks the final approval of the compensation and expense reimbursement previously approved on an interim basis pursuant to the First Fee Order as part of this Final Application.

## Jurisdiction and Venue

4.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.       Venue in this Court is proper pursuant to 28 U.S.C. § 1408.

6.       The bases for the relief requested herein are sections 327, 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 5082-1.

## Background

7.       On May 15, 2015 (the "***Petition Date***"), the 800 Building Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The 800 Building Debtor is an Illinois limited liability company that, as of the Petition Date owned and operated two adjacent rental properties in downtown Louisville, Kentucky: (a) a 246-unit residential apartment building known as The 800 Building, with a street address of 800 South 4th Street ("***The 800 Building***");

and (b) a 48-slot parking garage, with a street address of 820 South 4th Street (the "***Garage***"). The 800 Building is a 29-story, 290-foot skyscraper built in 1963.  The 800 Building Debtor acquired The 800 Building in 2002 for approximately $5.5 million and renovated the building in 2004.

8.     During the chapter 11 case, the Debtor operated its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner was made in this chapter 11 case, and no official committees were appointed or designated.

9.     On January 22, 2016, the Court entered an order [Docket No. 137] confirming the *First Amended Joint Plan of Reorganization of 1016 West Hollywood LLC and The 800 Building LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 75] (as amended, supplemented, or modified from time to time, the "***Joint Plan***"), which was filed in connection with the Hollywood Debtor (as defined below).  On January 28, 2016, the Joint Plan became effective and was consummated and both Debtors emerged from chapter 11 protection.

## The Debtor's Retention of Locke Lord

10.     On July 7, 2015, this Court entered an order [Docket No. 55] (the "***Retention Order***") authorizing the 800 Building Debtor to retain and employ Locke Lord, as of the Petition Date, as its counsel to assist the 800 Building Debtor with managing its chapter 11 estate, prosecuting this chapter 11 case, and addressing all related matters.

11.     The Retention Order authorizes the 800 Building Debtor to compensate Locke Lord in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the U.S. Trustee's Guidelines (the "***Guidelines***").

### Disinterestedness of Locke Lord

12.      As set forth in the declaration of David J. Fischer (the "***Declaration***") attached as

Exhibit B to the *Debtor's Application to Retain and Employ Locke Lord LLP as Attorneys for the*

*Debtor, Nunc Pro Tunc to the Petition Date* [Docket No. 50] (the "***Retention Application***"),

Locke Lord does not hold or represent any interest adverse to the 800 Building Debtor's estate

and is a "disinterested person" with respect to the 800 Building Debtor as that term is defined in

section 101(14) of the Bankruptcy Code.

13.      As set forth in the Declaration, Locke Lord may have in the past represented, may

currently represent, or may in the future represent parties in interest in this chapter 11 case in

connection with matters unrelated to the 800 Building Debtor and this chapter 11 case.  Those

connections Locke Lord has been able to identify with reasonable efforts have been disclosed in

the Declaration.

14.      Locke Lord performed services for which it is seeking compensation on behalf of

or for the 800 Building Debtor and its estate, and not on behalf of any committee, creditor, or

other entity.

15.      Except for the retainer paid to Locke Lord prior to the Petition Date, which was

disclosed in the Declaration, Locke Lord has not received any payment or promises for payment

from any source for services rendered or to be rendered in any capacity whatsoever in connection

with the chapter 11 case.

16.      Pursuant to Bankruptcy Rule 2016(b), Locke Lord has not shared, nor has Locke

Lord agreed to share: (a) any compensation it has received or may receive with another person,

other than with the partners, counsel, associates, and other employees of Locke Lord; or (b) any

compensation another person or party has received or may receive.

**Requested Compensation**

17.     By this Final Application, Locke Lord requests aggregate compensation for the Fee Period of $228,393.50 for services rendered and $3,810.32 for reimbursement of actual expenses, for a total compensation amount of $232,203.82, on a final basis.  To date, Locke Lord has not received any compensation for services provided or expenses incurred during the Fee Period.  Locke Lord also seeks final approval of the fees incurred that attributable to the Fee Period.

18.     The fees sought in this Final Application reflect an aggregate of 418.00 hours expended by Locke Lord professionals and paraprofessionals during the Fee Period rendering necessary and beneficial legal services to the Debtor, resulting in a blended average hourly rate of $546.40 for both attorneys and paraprofessionals (or $546.47 for attorneys only).

19.     Locke Lord maintains computerized records of the time expended in the performance of the professional services required by the 800 Building Debtor's estate. These records are maintained in the ordinary course of Locke Lord's practice.  The hourly rates and corresponding rate structure used by Locke Lord in this chapter 11 case are equivalent to the hourly rates and corresponding rate structure that Locke Lord predominately uses for restructuring, workout, bankruptcy, insolvency, and comparable matters, whether in court or otherwise, regardless of whether a fee application is required.

20.     Locke Lord's hourly rates are set at a level designed to compensate Locke Lord fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience in seniority of the individuals providing the services.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged by Locke Lord's competitor firms in the marketplace.

## Narrative Summary of Chapter 11 Case

21.      As the Court is aware, the 800 Building Debtor and its affiliate 1016 West

Hollywood, LLC (the "*Hollywood Debtor*" and, together with the 800 Building Debtor, the

"*Debtors*," now the "*Reorganized Debtors*"), both of which are owned by Leon and Helen

Petcov (the "*Petcovs*" and, together with the Reorganized Debtors, the "*Petcov Parties*")

confirmed a joint plan of reorganization[2] on January 21, 2016.  The purpose of the Plan was to

allow the Petcovs and the Reorganized Debtors to deal with various disputes with three key

creditor constituencies: (1) International Bank of Chicago ("*IBC*"); (2) 1st Equity Bank

Northwest ("*1st Equity*"); and (3) Fine Homes LLC ("*Fine Homes*"), Fine Homes' owners

Michael and Faina Loyfman (the "*Loyfmans*"), and the Loyfmans' son, Alex Loyfman (together

with Fine Homes and the Loyfmans, the "*Loyfman Parties*").  The Petcovs, the Loyfman Parties,

and 1st Equity were involved in a three-way dispute regarding the single-family residence

commonly known as 70 Harbor Street, Glencoe, Illinois ("*70 Harbor*"), that centered around 1st

Equity's loans to the Loyfman Parties, which were secured by 70 Harbor, and the Petcovs'

obligations under the *Article of Agreement for Warranty Deed* (the "*Contract for Deed*") with

Fine Homes, pursuant to which the Petcovs agreed to purchase 70 Harbor.  Those disputes had

eventually involved the Debtors and IBC (due to IBC's secured loans to the Debtors and a

number of their affiliates owned by the Petcovs).  The Debtors filed their chapter 11 cases to

provide a means to restructure these obligations and resolve the Petcov Parties' disputes with 1st

Equity, IBC, and the Lofyman Parties in comprehensive way.

22.      The twin pillars of the Plan were: (a) the restructuring and pay-off over time of

the Debtors' IBC obligations; and (b) the purchase by the 800 Building Debtor of 1st Equity's

---

[2]    *First Amended Joint Plan of Reorganization of 1016 West Hollywood, LLC and The 800 Building, LLC
Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 127] (the "*Plan*").

mortgage on, and the notes secured by, 70 Harbor for a total of $4.9 million—consisting of a $3.5 million initial cash payment and a $1.4 million promissory note to be paid off no later than July 31, 2017 (the "*1st Equity Note Purchase Promissory Note*").  Purchase of the 70 Harbor mortgage and debt from 1st Equity was intended to resolve the Petcov Parties disputes with 1st Equity and allow the Reorganized 800 Building Debtor to complete 1st Equity's foreclosure on 70 Harbor and use the resulting judgments to end the Petcov Parties' disputes with the Loyfman Parties under the Contract for Deed.  The terms of the Plan provided that the purchase of the 1st Equity notes and mortgage would require additional documentation beyond the plan, including the promissory note, allonges, assignment documents, and other ancillary documents to address aspects of the parties' agreement in full (the "*Assignment Documents*").

23.    As the Court is also aware, following the confirmation of the Plan, the Reorganized Debtors pursued and completed the foreclosure of 70 Harbor but also ended up engaging in further litigation with 1st Equity before this Court with respect to disputes involving the Assignment Documents.  Fortunately, the Reorganized Debtors, the Petcovs, the Loyfman Parties, and 1st Equity were able to reach agreements regarding certain transactions that allowed them to settle their disputes.  Those transactions closed on or about March 31, 2017.

24.    As set forth in greater detail in the *Disclosure Statement for the Joint Plan of Reorganization of 1016 West Hollywood, LLC and The 800 Building, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 76] (the "*Disclosure Statement*"), the Debtors' chapter 11 filings were necessitated by a series of interrelated transactions and obligations involving the Petcov Parties, IBC, 1st Equity, and the Loyfman Parties.  A brief review of these facts is helpful to understanding the arc of the Debtors' chapter 11 cases.

25.     On May 5, 2008, the Petcovs entered into the Contract for Deed, pursuant to which the Petcovs agreed to purchase 70 Harbor from Fine Homes.

26.     At the time that the Petcovs entered into the Contract for Deed, 70 Harbor secured loans to Fine Homes by 1st Equity in the principal amount of approximately $4.5 million (the "***70 Harbor Notes***") pursuant to a mortgage in favor of 1st Equity (the "***70 Harbor Mortgage***"). In late 2009, the Petcovs agreed to guarantee the 70 Harbor Notes and also caused the Hollywood Debtor to grant Fine Homes a third-priority mortgage on the Hollywood Debtor's property, a 72-unit apartment building located at 1016 West Hollywood Avenue, Chicago, Illinois (the "***Hollywood Property***") to guaranty the Petcovs' obligations under the Contract for Deed.   The Petcovs also caused the Hollywood Debtor to grant 1st Equity a fourth-priority mortgage on the Hollywood Property to secure the Petcovs' guaranty of the 70 Harbor Notes.

27.     As the 2008-2009 Financial Crisis began to gain momentum, the Petcovs' rental properties, including Debtors' properties, encountered financial difficulty as occupancy rates and current rent payments slipped.

28.     In August 2012, the Hollywood Debtor missed a monthly payment in August 2012 on its $3.6 million first-lien mortgage and was unable to pay the second installment of its 2011 real property taxes.   Among other things, this caused a default under the Hollywood Debtor's first-lien term loan, then held by an entity called VCP 1016 Hollywood LLC, which started an action to foreclose on the Hollywood Debtor's rental property in the Circuit Court of Cook County, Illinois, Chancery Division (the "***Chancery Division***"), captioned *VCP 1016 Hollywood LLC v. 1016 W. Hollywood LLC et al.*, Case No 12 CH 34901 (the "***Hollywood Foreclosure***").

29.     At the time VCP 1016 Hollywood LLC commenced the Hollywood Foreclosure, IBC held a $1.3 million second-lien position on the Hollywood Property.  However, IBC also held an approximately $450,000 loan secured by a second mortgage on the 800 Building Debtor's primary asset, a 246-unit residential high-rise in downtown at 800 South 4th Street, Louisville, Kentucky (known as "*The 800 Building*").  IBC also held loans with several of the Debtors' affiliates, all of which were owned by the Petcovs, totaling approximately $24.2 million — all of which debt was cross-collateralized, also guaranteed by Leon Petcov (collectively, the "*IBC Loans*").  Accordingly, to protect its second-lien position in the Hollywood Property and its cross-collateralized interests in the 800 Building Debtor and the Debtors' affiliates, IBC acquired the VCP 1016 Hollywood LLC first-lien loan.

30.     With their real estate interests struggling, the Petcovs were unable to make the required payments on the Contract for Deed and a related promissory note with Fine Homes executed by Leon Petcov to finance part of the obligations under the Contract for Deed.  Fine Homes, in turn, was unable to pay the 1st Equity Note, which went into default.

31.     On or about April 26, 2013, Fine Homes filed a complaint against the Petcovs seeking to enforce the Contract for Deed in a proceeding before the Law Division of the Circuit Court of Cook County, Illinois (the "*Law Division*"), captioned *Fine Homes LLC v. Leon Petcov and Helen Petcov*, Case No. 2013 L 004334 (the "*Contract Action*").

32.     Fine Homes also sought a receiver in the Hollywood Foreclosure.  With the receiver motion set to be heard on January 29, 2014, the Hollywood Debtor was compelled to seek chapter 11 relief to take advantage of the breathing room provided by the automatic stay to retain possession of its property and reorganize its obligations using the resources of the Bankruptcy Code.

33.     Additionally, on or about March 13, 2014, 1st Equity commenced a proceeding to foreclose the 70 Harbor Mortgage and enforce the 70 Harbor Notes in the Chancery Division, captioned *1st Equity Bank Northwest v. Fine Homes LLC, et al.*, Case No. 2014 CH 04372 (the "***Foreclosure Action***").   On August 1, 2014, 1st Equity also filed a complaint in the Law Division against the Petcovs seeking to enforce their guarantee of the 70 Harbor Notes, captioned *1st Equity Bank Northwest v. Leon Petcov and Helen Petcov*, 2014 L 008068 (the "***Guarantee Litigation***")

34.     While the Hollywood Debtor's chapter 11 case progressed, the Hollywood Debtor and the Petcovs sought to reach a negotiated solution with IBC, Fine Homes, and 1st Equity, while 1st Equity pushed forward on the Guarantee Litigation against the Petcovs.  At the same time, the Hollywood Debtor and the Petcovs continued to have negotiations, particularly with IBC and 1st Equity about a means to restructure the Hollywood Debtor's and the Petcovs' obligations.

35.     While the Hollywood Debtor and the Petcovs were negotiating with 1st Equity, IBC, and the Loyfman Parties, the 800 Building Debtor was preparing to sell The 800 Building for approximately $20.65 million—enough to (a) pay off the $15.5 million first-lien mortgage on The 800 Building in favor of Republic Bank of Chicago ("***Republic Bank***"), (b) pay off IBC's $450,000 second-line mortgage on The 800 Building, mentioned above, and (c) leave $4.3 million in proceeds (which was still IBC's collateral) which could be used (with IBC's agreement) to fund the Hollywood Debtor's plan and make a settlement with IBC, 1st Equity, and the Loyfmans.  Through negotiations with IBC led by Locke Lord, the Hollywood Debtor, the Petcovs, and IBC had reached an agreement in principal on the terms of restructuring the IBC

Loans (the "*IBC Restructuring Support Agreement*") that would allow The 800 Building sale proceeds to be used for these purposes.

36.    When 1st Equity learned of these negotiations, it filed an "emergency" motion in the Guarantee Litigation, claiming that the Petcovs were preparing to leave the country with The 800 Building sale proceeds, and convincing the Guarantee Litigation court to reverse itself on a prior denial of summary judgment in favor of 1st Equity.  Accordingly, on February 15, 2015, the Law Division issued a judgment in the Guarantee Litigation in favor of 1st Equity and against the Petcovs personally in the amount of $6.345 million (the "*Guarantee Judgment*"), which 1st Equity also claimed was secured by its fourth-lien mortgage against the Hollywood Property.

37.    The Loyfmans also learned of the upcoming sale of The 800 Building and caused Fine Homes to file a *lis pendens* against The 800 Building.  The *lis pendens* had no meritorious legal basis, and neither the Loyfmans nor Fine Homes had a valid claim against the 800 Building Debtor, let alone a lien on its property.  Nevertheless, the title company refused to insure over the *lis pendens* and removal of the *lis pendens* through available state-court processes would have imperiled the sale, as the purchaser's financing commitment would have expired.  Additionally, pursuant to the terms of a forbearance with Republic Bank, the 800 Building Debtor would have been obligated to pay Republic Bank an additional $500,000 if it could not complete the sale to pay off the Republic Bank loans by June 15, 2015.  As a result, the 800 Building Debtor was forced to seek chapter 11 relief to complete, with the assistance of Locke Lord, the expedited sale of The 800 Building pursuant to section 363(f) of the Bankruptcy Code, free and clear of the

*lis pendens*.  On June 9, 2015, this Court entered an order approving the sale of The 800 Building.[3]  The sale closed on June 12, 2015.

38.     At the same time that the Debtors and Locke Lord worked to complete the sale of The 800 Building, they also continued negotiations with IBC and 1st Equity.  With respect to IBC, those discussions centered around confirming a plan of reorganization that would implement the IBC Restructuring Support Agreement and allow for the resolution of 1st Equity's and Fine Homes' claims—which continued to be the main difficulties.

39.     Ultimately, 1st Equity, the Debtors, and the Petcovs began to focus their efforts around a plan structure pursuant to which (a) the 800 Building Debtor would purchase the 70 Harbor Notes, the 70 Harbor Mortgage and the Guarantee Judgment against the Petcovs, (b) 1st Equity's fourth-priority mortgage on the Hollywood Property would be released pursuant to the Plan, and (c) the Reorganized Debtors and the Petcovs would use the 70 Harbor Notes and the 70 Harbor foreclosure action to resolve the Loyfman Parties' Contract for Deed claims, including Fine Homes' third-priority mortgage on the Hollywood Property.  It was anticipated that, in the end, 1st Equity would receive its agreed settlement amount of $4.9 million, Loyfman Parties' claims would be resolved, the Hollywood Debtor and the Petcovs would be released from their obligations to the Loyfman Parties, and the reorganized 800 Building would own 70 Harbor free and clear and could dispose of it profitably.

40.     To this end, on June 2, 2015, 1st Equity's counsel forwarded a term sheet (the "***1st Equity Term Sheet***" or the "***Term Sheet***") to Locke Lord that, among other things called for 1st Equity to be paid total consideration of $4.7 million for the 70 Harbor Notes, the 70 Harbor

---

[3]     *Order (a) Approving Purchase and Sale Agreement for the Sale of the Debtor's Real Property Commonly Known as The 800 Building, Located in Louisville, Kentucky; (b) Authorizing the Sale of The 800 Building Free and Clear of All Liens, Claims, Encumbrances, and Interests; (c) Authorizing the Assumption and Assignment of Contracts and Leases; and (d) Granted Related Relief* [Docket No. 41] (the "***Sale Order***").

Mortgage, and the Guarantee Judgment—consisting of $3.0 million in cash through a confirmed plan, with a $1.7 million note from the Reorganized 800 Building Debtor with an 18-month maturity, referred to above as the 1st Equity Note Purchase Promissory Note, guaranteed by the Petcovs, and providing 1st Equity with certain relief in the event of a default.

41.     Through the second half of 2015, the Debtors, the Petcovs, and IBC continued to finalize the documentation for the IBC Restructuring Support Agreement.  The Debtors and the Petcovs also continued to negotiate with 1st Equity on the terms of a global deal along the lines set forth in the 1st Equity Term Sheet.   While Locke Lord endeavored to push forward negotiations on behalf of the Debtors as quickly as possible, progress on the Term Sheet was slow.  A key sticking point was that, in order for the Petcovs to obtain the financing necessary to repay the $1.7 million note to 1st Equity, and to refinance the IBC Loan pursuant to the IBC Restructuring Support Agreement, the Petcovs would need to guarantee the refinancing obligations of the Reorganized Debtors.   However, no bank would accept the Petcovs' guarantees for these new refinancing loans while the Petcovs were subject to the Guarantee Judgment and the citations issued by 1st Equity—thus, it would be impossible for the Reorganized Debtors to fulfill the terms of any proposed plan based on the IBC Restructuring Support Agreement and the 1st Equity Term Sheet.

42.     On September 8, 2015, Locke Lord sent 1st Equity's counsel a revised version of the Term Sheet that attempted to address this issue by giving 1st Equity first-lien mortgages on two parking lots in Louisville, Kentucky owned by two of the Petcovs' non-debtor LLCs (the "**Kentucky Parking Lots**"). 1st Equity rejected this proposal on the basis that without the Guarantee Judgment, 1st Equity would be required to start at square one if there was a default.

43.    Accordingly, on September 11, 2015, Locke Lord responded on behalf of the Debtors with a revised proposal that again explained the guarantee issue and instead offered to give 1st Equity a quit claim deed to 70 Harbor, to be held in escrow and released to 1st Equity only in the event of a default or maturity of the promissory note.

44.    Negotiations on the Term Sheet effectively stalled until IBC, 1st Equity, the Petcovs, and the Debtors (represented by Locke Lord) conducted an in-person meeting at the offices of IBC's counsel on December 10, 2015.  At that meeting, among other things, the parties' agreed on the following:

- 1st Equity would receive total compensation for the 70 Harbor Notes, the 70 Harbor Mortgage, and the Guarantee Judgment in the amount of $4.9 million, instead of $4.7 million.

- The initial cash payment to 1st Equity under the Debtors' plan would increase from $3.0 million to $3.5 million.

- The 1st Equity Note Purchase Promissory Note would now be a $1.4 million note, instead of $1.7 million, but would continue to have an 18-month maturity (based on the Plan Effective Date).

- The Guarantee Judgment would be released on the Plan Effective Date, but if the Reorganized 800 Building failed to repay the 1st Equity Note Purchase Promissory Note by the end of the 18 months, the amount owed on the note would jump to $3.7 million as a means of "reinstating" the Guarantee Judgment.

45.    Between the December 10, 2015 meeting and Monday, January 18, 2016, the parties continued to exchange drafts of the Term Sheet that addressed various issues, including

whether 1st Equity would finance a separate $400,000 loan against the Kentucky Parking Lots and whether (and to what extent) the Reorganized 800 Building would receive a discount for paying the 1st Equity Note Purchase Promissory Note early. Ultimately the concept of borrowing against Kentucky Parking Lots concept was dropped, and the parties also settled on a $200,000 discount for paying off the 1st Equity Note Purchase Promissory Note within 60 days of the plan effective date.

46.     On January 18, 2016, 1st Equity added a further demand under the Term Sheet: because 1st Equity was being examined and its regulators where presently in its offices, 1st Equity needed the Debtors' plan to go effective—and, most importantly, for 1st Equity to receive the initial $3.5 million cash payment—no later than January 28, 2016, or there could be no deal.

47.     With the confirmation hearing on the Debtors' joint plan scheduled for the following day, January 19, 2016, the Debtors agreed to 1st Equity's newest demand. At the same time, the Debtors learned that the Loyfman Parties had sold certain claims against the Debtors, to Igor and Joseph Vilk (the "*Vilks*"). Locke Lord effectively negotiated a resolution of these claims into the terms of the Plan so that confirmation of the Plan could go forward without interruption.

48.     At the January 19, 2016 confirmation hearing, the Debtors informed the Court of the deal with 1st Equity and the Vilks and asked the Court, and the Court agreed, to continue the confirmation hearing to January 21, 2016. On January 20, 2016, the Debtors filed an amended version of the Plan that incorporated the terms of the 1st Equity deal and the Vilks deal, and 1st Equity filed amended ballots to vote in favor of the Plan [Docket No. 129]. On January 21, 2016, the Court conducted the confirmation hearing and ruled that it would confirm the Plan. On

January 21, 2016, the Court entered an order confirming the Plan.[4]  The Plan became effective

on January 28, 2016 (the "***Effective Date***").

49.    As noted above, following the occurrence of the Effective Date, the Reorganized

Debtors and 1st Equity engaged in certain additional litigation regarding disputes about their

rights under the Plan and the supplemental documents implementing the settlements and

agreements that formed the basis for the Plan.   Locke Lord continued to represent the

Reorganized Debtors in litigating and resolving these disputes.  Locke Lord also represented The

800 Building Debtor in pursuing the Foreclosure Action with respect to 70 Harbor against Fine

Homes and successfully completed the foreclosure.   Having obtained 70 Harbor, The 800

Building then sought to resolve its Contract for Deed disputes with the Loyfman Parties.

Ultimately, Locke Lord was successful in negotiating a three-way resolution among the

Reorganized Debtors, 1st Equity, and the Loyfman Parties that was consummated in a series of

transactions that closed on or about March 31, 2017.  Since that time, the Reorganized Debtors

have moved forward with their restructured businesses.  Concurrently with the filing of this final

fee application, and Locke Lord's final fee application in the Hollywood Debtor's chapter 11

case, the Reorganized Debtors are seeking to obtain an final decree and close both chapter 11

cases.   Accordingly, Locke Lord now seeks an order finally allowing their fees, the last

administrative item to be addressed in these consummated and resolved cases.

## Summary of Services Performed

50.    During the Fee Period, Locke Lord provided significant professional services to

the 800 Building Debtor in connection with this chapter 11 case.  These services were necessary

---

[4]    *Order (a) Approving the Adequacy of the Disclosure Statement for, and (b) Confirming, the First Amended
Joint Plan of Reorganization of 1016 West Hollywood, LLC and The 800 Building, LLC Pursuant to Chapter 11
of the Bankruptcy Code* [Docket No. 137] (the "**Confirmation Order**").

to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by debtors in similar cases.

51.     The following table consists of a breakdown of the amount of fees incurred due to the services rendered by each Locke Lord attorney or paraprofessional (after accounting for all voluntary reductions), including each such attorney or paraprofessional's position and year admitted to the practice of law (if applicable), department, hourly rate, total hours expended in providing services to the 800 Building Debtor in the Fee Period, and the value attributable to such services:

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $745.00 | 54.70 | $9,610.50 |
| | | | | $775.00 | 7.60 | $5,890.00 |
| Gina M. Gamal | Partner | 2006 | Real Estate | $570.00 | 1.30 | $741.00 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 249.50 | $34,079.00 |
| | | | | $585.00 | 36.30 | $20,358.00 |
| Jennifer R. Garner | Associate | 2008 | Real Estate | $565.00 | 15.90 | $8,983.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 41.40 | $3,395.00 |
| | | | | $385.00 | 5.30 | $1,578.50 |
| Stephen J. Humeniuk | Associate | 2013 | Restructuring | $340.00 | 5.40 | $1,836.00 |
| Michael J. Conroy | Associate | 2015 | Tax | $330.00 | 0.50 | $165.00 |
| Total | | | | | 417.90 | $228,368.00 |

| Paraprofessional | Position | Department | Rate | Hours | Total |
|---|---|---|---|---|---|
| Jeannie Ha | Paralegal | Business Law | $255.00 | 0.10 | $25.50 |
| Sub-Total | | | | 0.10 | $25.50 |

| Total | | | | 418.00 | $228,393.50 |

52.     To provide a meaningful summary of Locke Lord's services rendered on behalf of the 800 Building Debtor, Locke Lord has established, in accordance with the Guidelines and its internal billing procedures, certain subject matters (each, a "*Matter*") in connection with these chapter 11 cases.  The following is a summary, by Matter, of the professional services rendered

by Locke Lord during the Fee Period.  This summary is organized in accordance with Locke

Lord's internal system of Matter numbers, which is as follows:

| Matter Number | Matter Description |
|---|---|
| 1 | Chapter 11 Bankruptcy Filing |
| 2 | Sale of The 800 Building |
| 3 | Plan, Disclosure Statement, and Exit Planning |
| 4 | Secured Creditor Issues and Negotiations |
| 5 | Case Administration |
| 6 | Unsecured Creditor Issues and Negotiations |
| 7 | Monthly Operating Reports, Schedules, and Statement of Financial Affairs |
| 8 | Locke Lord Retention Issues |
| 9 | Professional Retention Issues (non-Locke Lord) |

53.     Additionally, the computerized time records for the Fee Period, organized by

Matter, have been attached to this Application.  The following table summarizes Locke Lord's

fees and expenses incurred during the Fee Period, broken down by Matter:

| Matter Number | Matter Description | Hours | Fees | Expenses | Total |
|---|---|---|---|---|---|
| 1 | Chapter 11 Bankruptcy Filing | 4.50 | $2,385.00 | $142.80 | $2,527.80 |
| 2 | Sale of The 800 Building | 102.90 | $57,726.50 | $349.21 | $58,969.71 |
| 3 | Plan, Disclosure Statement, and Exit Planning | 156.50 | $86,636.50 | $3,318.31 | $89,954.81 |
| 4 | Secured Creditor Issues and Negotiations | 27.40 | $16,081.50 | $0.00 | $16,081.50 |
| 5 | Case Administration | 22.70 | $11,910.00 | $0.00 | $11,910.00 |
| 6 | Unsecured Creditor Issues and Negotiations | 20.70 | $13,810.50 | $0.00 | $13,810.50 |
| 7 | Monthly Operating Reports, Schedules, and Statement of Financial Affairs | 17.70 | $9,098.50 | $0.00 | $9,098.50 |
| 8 | Locke Lord Retention Issues | 36.80 | $17,796.00 | $0.00 | $17,796.00 |
| 9 | Professional Retention Issues | 28.80 | $12,949.00 | $0.00 | $12,949.00 |

| | | | | | |
|---|---|---|---|---|---|
| (non-Locke Lord) | | | | | |
| **Totals** | | **418.00** | **$228,393.50** | **$3,810.32** | **$228,393.50** |

54.    The following is a summary, by Matter, of the legal services rendered by Locke Lord during the Fee Period:

## A.    Chapter 11 Bankruptcy Filing (Matter 1)[5]

(Fees: $2,385.00; Hours: 4.50)

55.    This Matter includes time that Locke Lord attorneys and paraprofessionals spent on matters related to filing the 800 Building Debtor's bankruptcy case and transitioning into chapter 11.  This Matter also includes advice and guidance given by Locke Lord to the 800 Building Debtor with respect to its responsibilities as a debtor in possession.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 4.50 | $2,385.00 |
| **Total** | | | | | **4.50** | **$2,385.00** |

## B.    Sale of The 800 Building (Matter 2)[6]

(Fees: $57,726.50; Hours: 102.90)

56.    This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to assisting the 800 Building Debtor with conducting an auction and sale of The 800 Building.

57.    On the Petition Date, the 800 Building Debtor filed its *Motion for Entry of: (I) an Order (A) Approving 800 City Apartments LLC as the Stalking-Horse Bidder in Connection with the Sale of the Debtor's Apartment Building and Related Assets; (B) Approving Bidding Procedures and Bid Protections; (C) Scheduling an Auction and a Sale Hearing; (D) Approving*

---

[5]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit A.**

[6]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit B.**

*the Form and Manner of Notice Thereof, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) After Further Notice and a Hearing, an Order (A) Approving a Purchase and Sale Agreement; (B) Authorizing the Sale of The 800 Building Free and Clear of All Liens, Claims, Encumbrances, and Interests; (C) Authorizing the Assumption and Assignment of Contracts and Leases; and (D) Granting Related Relief* [Docket No. 3] (the "***Sale Motion***").  On May 21, 2015, the Court entered an order (the "***Bidding Procedures Order***")[7] in connection with the Sale Motion that, among other things (a) approved 800 City Apartments LLC as the stalking-horse bidder (the "***Stalking-Horse Bidder***") for the sale of The 800 Building (the "***Sale***"), (b) approved bidding procedures for the Sale and bid protections for the Stalking-Horse Bidder, (c) scheduled the auction or the Sale for June 8, 2015 at 2:00 p.m. (the "***Auction***"), and (d) scheduled a hearing to approve the Sale for June 9, 2015 at 11:00 a.m. Central Time (the "***Sale Hearing***").

58.     On June 8, 2015, pursuant to the Bidding Procedures Order, the Auction was cancelled as no competing bids were received, and the Stalking-Horse Bidder was declared the successful bidder for The 800 Building.  On June 9, 2015, the Court conducted the Sale Hearing and entered the order [Docket No. 41] (the "***Sale Order***")[8] approving the sale of The 800 Building to the Stalking-Horse Bidder.  The 800 Building Debtor consummated the sale of The 800 Building on June 16, 2015 for $20.65 million, yielding net proceeds of approximately $4.3 million after paying secured debt and seller closing costs.

---

[7]     *Order (a) Approving 800 City Apartments LLC as the Stalking-Horse Bidder in connection with the Sale of the Debtor's Real Property Commonly known as The 800 Building, Located in Louisville Kentucky, (b) Approving Bidding Procedures and Bid Protections, (c) Scheduling an Auction and a Sale Hearing, (d) Approving the Form and Manner of Notice Thereof, (e) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (f) Granting Related Relief* [Docket No. 11].

[8]     *Order (a) Approving Purchase and Sale Agreement for the Sale of the Debtor's Real Property Commonly Known as The 800 Building, Located in Louisville, Kentucky; (b) Authorizing the Sale of The 800 Building free and Clear of Liens, Claims, Encumbrances, and Interests; (c) Authorizing the Assumption and Assignment of Contracts and Leases, and (d) Granting Related Relief.*

59.     As set forth in the Sale Motion, beginning in April 2014, the 800 Building Debtor engaged Tikijian Associates, a brokerage firm specializing in the sale of multi-unit housing properties in Indiana and Kentucky, to assist with the marketing of The 800 Building.  The 800 Building Debtor and Tikijian Associates engaged in an extensive effort to market The 800 Building over the course of 9 months, which included interest by more than 12 potential purchasers.  Ultimately, this process led to the 800 Building Debtor entering into a Purchase and Sale Agreement for The 800 Building with the Stalking-Horse Bidder, an affiliate of Village Green Development Holding LLC (collectively, "*Village Green*") with a proposed purchase price of $20.65 million.  As further explained in the Sale Motion and above, the 800 Building Debtor's chapter 11 filing was necessitated by the filing of a *lis pendens* against The 800 Building by the Loyfman Parties.  To complete the sale and avoid (a) losing their purchaser and (b) incurring an additional forbearance fees of approximately $500,000 that would come due on June 30, 2015 if the 800 Building Debtor did not pay its first-lien loan in full, the 800 Building Debtor sought to conduct an expedited bankruptcy sale process and obtain an order from this Court to complete the Sale free and clear of all liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code.

60.     As a result of the Sale and the settlements that the Debtors and the Petcovs negotiated with the various constituencies, the 800 Building Debtor was able to procure the means to pay all creditors in full, subject to the terms of a confirmed plan.  Indeed, the Debtors filed a plan on November 3, 2015 and a solicitation process ensued, which resulted in an order entered by the Court approving the Disclosure Statement and the Plan on January 21, 2016, with the Plan becoming effective and the Debtors emerging from chapter 11 protection on January 28, 2016.

61.     None of this would have been possible had the 800 Building Debtor not conducted the auction and confirmed the Sale, made possible through Locke Lord's efforts. Accordingly, the efforts expended by Locke Lord with respect to the tasks categorized under this Matter have been critical to the success of the 800 Building Debtor's chapter 11 case.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $745.00 | 15.80 | $11,771.00 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 86.00 | $45,580.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 1.00 | $350.00 |
| Sub-Total | | | | | 102.80 | $57,701.00 |

| Paraprofessional | Position | Department | Rate | Hours | Total |
|---|---|---|---|---|---|
| Jeannie Ha | Paralegal | Business Law | $255.00 | 0.10 | $25.50 |
| Sub-Total | | | | 0.10 | $25.50 |

| Total | | | | | 102.90 | $57,726.50 |

## C.     Plan, Disclosure Statement, and Exit Planning (Matter 3)[9]

(Fees: $86,636.50; Hours: 156.50)

62.     This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to drafting the 800 Building Debtor's preliminary plan and disclosure statement and also a motion [Docket No. 69] to extend and preserve the 800 Building Debtor's exclusive right to file a plan and to solicit acceptances of that plan.

63.     As mentioned above, since the Petition Date, the 800 Building Debtor worked on a joint plan of reorganization with its debtor affiliate, the Hollywood Debtor, whose related chapter 11 case is also before this Court.  Along with the Hollywood Debtor, the 800 Building Debtor has engaged in negotiations with IBC to develop a restructuring support agreement that involves more than $16 million in debt (including loans extended to the Hollywood Debtor and

---

[9]     A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit C.**

affiliated non-debtor entities owned by the Debtor's members, Leon and Helen Petcov, which are cross-collateralized by the Debtor's assets).  That settlement will allow the Hollywood Debtor the time to refinance its secured obligations, while freeing up the remainder of the Debtor's approximately $4.1 million in cash on hand to resolve unsecured claims against the Debtor and deliver a return to equity.  The 800 Building Debtor and the Hollywood Debtor also negotiated with 1st Equity to resolve 1st Equity's secured claim against the Hollywood Debtor and its judgment against the Petcovs, both of which are key to being able to implement the settlement with IBC.

64.    These various settlements were successfully reached and implemented through the Debtor and the Hollywood Debtor's joint plan, which was filed on November 3, 2015.  On January 21, 2016, the Court approved the Disclosure Statement and confirmed the Joint Plan. The confirmation of the Joint Plan enabled the 800 Building Debtor to complete its reorganization and successfully emerge from chapter 11 protection on January 28, 2016.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $745.00 | 12.90 | $9,610.50 |
| | | | | $775.00 | 7.60 | $5,890.00 |
| Gina M. Gamal | Partner | 2006 | Real Estate | $570.00 | 1.30 | $741.00 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 64.30 | $34,079.00 |
| | | | | $585.00 | 34.80 | $20,358.00 |
| Jennifer R. Garner | Associate | 2008 | Real Estate | $565.00 | 15.90 | $8,983.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 9.70 | $3,395.00 |
| | | | | $385.00 | 4.10 | $1,578.50 |
| Stephen J. Humeniuk | Associate | 2013 | Restructuring | $340.00 | 5.40 | $1,836.00 |
| Michael J. Conroy | Associate | 2015 | Tax | $330.00 | 0.50 | $165.00 |
| Total | | | | | 156.50 | $86,636.50 |

D.    **Secured Creditor Issues and Negotiations (Matter 4)**[10]

(Fees: $16,081.50; Hours: 27.40)

65.    This Matter includes time spent by Locke Lord attorneys and paraprofessionals addressing issues with respect to the 800 Building Debtor's secured creditors, Republic Bank and IBC.  Republic Bank's secured claim was paid in full from the proceeds of the Sale, subject to the 800 Building Debtor's right to challenge the validity, extent, and priority of those claims. The 800 Building Debtor continues to review its claims against Republic Bank, and a portion of the time spent by Locke Lord under this Matter includes legal research, negotiations, and other discussions regarding these claims.  Additionally, this matter includes time spent on behalf of the 800 Building Debtor negotiating a settlement with IBC as described above that led to the 800 Building Debtor's ability to file and confirm the Joint Plan.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $745.00 | 10.10 | $7,524.50 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 13.90 | $7,367.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 3.40 | $1,190.00 |
| **Total** | | | | | **27.40** | **$16,081.50** |

E.    **Case Administration (Matter 5)**[11]

(Fees: $11,910.00; Hours: 22.70)

66.    This Matter includes the time that Locke Lord attorneys and paraprofessionals spent on attending to the general administration of this chapter 11 case during the Fee Period, including:

---

[10]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit D.**

[11]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the 800 Building Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit E.**

- preparing the 800 Building Debtor for and attending the 800 Building Debtor's initial interview with the U.S. Trustee and advising the 800 Building Debtor with respect to its reporting requirements;

- assisting the 800 Building Debtor in preparing debtor-in-possession bank accounts;

- coordinating with the 800 Building Debtor regarding the payment of the quarterly U.S. Trustee fees; and

- preparing and filing a motion to set claims bar dates in this chapter 11 case [Docket No. 52], obtaining an order from the Court setting the bar dates on that motion [Docket No. 56], and serving creditors with notice of the claims bar dates in this chapter 11 case.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 20.20 | $10,706.00 |
| | | | | $585.00 | 1.40 | $819.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 1.10 | $385.00 |
| **Total** | | | | | **22.70** | **$11,910.00** |

**F.    Unsecured Creditor Issues and Negotiations (Matter 6)[12]**

(Fees: $13,810.50; Hours: 20.70)

67.    This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to the 800 Building Debtor's negotiations with its unsecured creditors, including Fine Homes and 1st Equity.  Fine Homes has asserted a claim against the 800 Building Debtor for just over $1 million, based on claims against Leon and Helen Petcov.  Indeed, it was Fine Homes' actions to stop the sale of The 800 Building — *i.e.*, filing a lawsuit against the 800 Building Debtor in Kentucky and a *lis pendens* against The 800 Building itself — that compelled the 800 Building Debtor to file this chapter 11 case in order to be able to complete the Sale in a timely fashion.

---

[12]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the 800 Building Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit F.**

68.    1st Equity, itself, has no prepetition claims against the 800 Building Debtor. However, 1st Equity is a secured creditor of the Hollywood Debtor and has asserted a judgment lien against the right of the Petcovs to receive distributions on their ownership in the 800 Building Debtor.  Failing to resolve this judgment would impair the ability of the 800 Building Debtor and the Hollywood Debtor to resolve IBC's claims and would, ultimately, lead IBC to pursue its state-law remedies and liquidate the assets of the 800 Building Debtor, the Hollywood Debtor, and their non-debtor affiliates that are also borrowers on the $16 million in cross-collateralized IBC debt.  Accordingly, these ongoing discussions were an essential element of the ability of the 800 Building Debtor to implement a reorganization strategy, confirm the Joint Plan, and emerge from chapter 11 successfully.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $745.00 | 15.30 | $11,398.50 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 2.90 | $1,537.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 2.5 | $875.00 |
| **Total** | | | | | **20.70** | **$13,810.50** |

**G.    Monthly Operating Reports, Schedules, and Statement of Financial Affairs (Matter 7)[13]**

(Fees: $9,098.50; Hours: 17.70)

69.    This Matter includes the time that Locke Lord attorneys and paraprofessionals spent assisting the Debtor with the preparation of its monthly operating reports, its schedules of assets and liabilities, and its statement of financial affairs.

---

[13]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the 800 Building Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit G.**

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 16.00 | $8,480.00 |
| | | | | $585.00 | 0.10 | $58.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 1.60 | $560.00 |
| **Total** | | | | | **17.70** | **$9,098.50** |

**H.      Locke Lord Retention Issues (Matter 8)[14]**

(Fees: $17,796.00; Hours: 36.80)

70.      This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to preparing and obtaining approval of Locke Lord's retention application [Docket No 50] and to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and Guidelines, including conducting searches of Locke Lord's database with respect to potential connections to parties in interest.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $745.00 | 0.40 | $298.00 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 26.20 | $13,886.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 9.00 | $3,150.00 |
| | | | | $385.00 | 1.20 | $462.00 |
| **Total** | | | | | **36.80** | **$17,796.00** |

**I.      Professional Retention Issues (Non-Locke Lord) (Matter 9)[15]**

(Fees: $12,949.00; Hours: 28.80)

71.      This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to the retention of other professionals in this chapter 11 case, specifically, the 800 Building Debtor's application to retain and employ Tikijian Associates as the 800 Building Debtor's broker to sell The 800 Building [Docket No. 51], the 800 Building Debtor's application

---

[14]   A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the 800 Building Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit H.**

[15]   A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the 800 Building Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit I.**

to retain and employ Wyatt, Tarrant & Combs LLP ("**Wyatt Tarrant**") as the 800 Building

Debtor's special, real estate counsel in Kentucky (where The 800 Building was located) in

connection with the Sale, and the 800 Building Debtor's applications to pay Tikijian Associates

its commission [Docket Nos. 62 and 63] and Wyatt Tarrant its postpetition fees [Docket Nos. 84

and 93] in connection with the successful sale of The 800 Building.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $745.00 | 0.20 | $149.00 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $530.00 | 15.50 | $8,215.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 13.10 | $4,585.00 |
| Total | | | | | 28.80 | $12,949.00 |

**Reasonable and Necessary Services Rendered by Locke Lord**

72.     The foregoing professional services rendered by Locke Lord on the half of the

800 Building Debtor during the Fee Period were reasonable, necessary, and appropriate to the

administration of this chapter 11 case and related matters.

73.     Locke Lord enjoys a national reputation for its legal expertise, and the attorneys

of Locke Lord have represented debtors, creditors' committees, trustees, and creditors holding

substantial claims in numerous chapter 11 cases, both in this district and around the country.

Locke Lord brings to this chapter 11 case a particularly high level of skill and knowledge, which

has inured to the benefit of the 800 Building Debtor and its stakeholders.

**Actual and Necessary Expenses Incurred by Locke Lord**

74.     Locke Lord has incurred a total of $3,810.32 in expenses on behalf of the 800

Building Debtor during the Fee Period.

75.     These charges are intended to reimburse Locke Lord's direct operating costs,

which are not incorporated into the Locke Lord hourly billing rates.  Locke Lord charges

external copying at the provider's cost, without markup.  Only clients who actually require such

services are separately charged for such services.  Effectively including such expenses as part of the hourly billing rates would impose the cost point on clients who do not require extensive photocopying and other facilities and services.  Furthermore, Locke Lord has not charged the debtor for expenses related to legal research.

76.     Locke Lord has made every effort to minimize its disbursements in this chapter 11 case.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the 800 Building Debtor in this chapter 11 case.

### Locke Lord's Requested Compensation and Reimbursement Should Be Allowed

77.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement.

78.     In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:

a.     time spent on such services;

b.     the rates charged for such services;

c.     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

      d.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

      e.      whether the compensation is reasonable based on the customary compensation charged by comparable skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

79.     In the instant case, Locke Lord respectfully submits that the services for which it seeks compensation in this Final Application were necessary for and beneficial to the 800 Building Debtor and its estate and were rendered to protect and preserve the 800 Building Debtor's estate. Locke Lord respectfully submits that the services rendered to the 800 Building Debtor were performed economically, effectively and efficiently and that the results obtained to date have benefited not only the 800 Building Debtor but all stakeholders in the 800 Building Debtor's chapter 11 case. Locke Lord further submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to the 800 Building Debtor, its estate and all parties in interest.

80.     Locke Lord attorneys and paraprofessionals spent a total of 418.00 hours during the Fee Period, which services have a fair market value of $228,393.50. As demonstrated by this Application and all of the exhibits submitted in support hereof, Locke Lord spent its time economically and without unnecessary duplication. In addition, the work conducted was carefully assigned to appropriate attorneys or paraprofessionals according to the experience and level of expertise required for each particular task. In summary, the services rendered by Locke Lord were necessary and beneficial to the 800 Building Debtor and its estate, and were consistently performed in a timely manner commensurate with the complexity, importance, novelty and nature of the issues involved. Accordingly, Locke Lord respectfully submits that

approval on a final basis of the compensation and expense reimbursement sought herein is warranted.  Moreover, for the foregoing reasons, Locke Lord submits that the fees and expenses awarded to date, specifically allocable to the Fee Period, should be approved on a final basis.

### Proposed Source of Payment

81.     The balance owed on Locke Lord's allowed fees and expenses will be paid from the 800 Building Debtor's cash on hand.

### Notice

82.     Locke Lord has provided notice of this Final Application, in the manner set forth on the Certificate of Service attached hereto, to: (a) the Office of the United States Trustee; (b) counsel to the 800 Building Debtor's prepetition secured creditors; (c) all of the 800 Building Debtor's other known creditors; (d) the Internal Revenue Service; (e) the Illinois Department of Revenue; and (f) any entity that has filed a request for notice in the above-captioned cases pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested, Locke Lord respectfully submits that no further notice is necessary.

### No Prior Request

83.     No prior request for the relief sought in this Final Application has been made to this or any other court, although, as noted above, Locke Lord has sought and obtained interim allowance of certain fees and expenses pursuant to the First Interim Fee Application.

WHEREFORE, Locke Lord respectfully requests that this Court enter an order substantially in the form of the Proposed Order: (a) allowing and awarding Locke Lord, on an interim basis, compensation for professional services rendered during the Fee Period in the amount of $228,393.50 and for reimbursement of actual and necessary expenses incurred by Locke Lord during the Fee Period in the amount of $3,810.32; and (b) granting such other and further relief as the Court deems just.

Dated: October 16, 2017

**LOCKE LORD LLP**

By:   */s/Phillip W. Nelson*
       An Attorney of the Firm

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Counsel to The 800 Building, LLC*