**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| 1016 WEST HOLLYWOOD, LLC,[1] | Case No. 14-02696 |
| Reorganized Debtor. | Hon. Jacqueline P. Cox |
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[2] | Case No. 15-17314 |
| Reorganized Debtor. | Hon. Jacqueline P. Cox |

## NOTICE OF MOTION

TO: See attached Service List

    **PLEASE TAKE NOTICE** that on **Tuesday, November 17, 2017 at 9:30 a.m. Central Time**, or as soon thereafter as counsel may be heard, the undersigned will appear before United States Bankruptcy Judge Jacqueline P. Cox, or any other judge sitting in her stead, in Courtroom 680 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present the attached *Reorganized Debtors' Joint Motion for Entry of Final Decrees Closing Cases*, a copy of which is hereby served upon you, at which time and place you may appear as you see fit.

---

[1]    Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Hollywood Debtor's federal tax identification number are: 1721. The location of the Hollywood Debtor's place of business is 1016 West Hollywood Avenue, Chicago, Illinois 60660.

[2]    Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the 800 Building Debtor's federal tax identification number are: 2596. The location of the 800 Building Debtor's place of business is 820 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

Dated: October 16, 2017                Respectfully submitted,

                                        **1016 WEST HOLLYWOOD, LLC, AND
                                        THE 800 BUILDING, LLC**

                                        By:   */s/Phillip W. Nelson*
                                               One of Their Attorneys

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-201-2000
Facsimile: 855-587-1388
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Counsel to the Reorganized Debtors*

## <u>Service List</u>

**For the Hollywood Debtor –**

**Via U.S. Mail**

1st Equity Bank Northwest
Attn: Daniel Lynch
Amy J. Hansen
Lynch & Stern LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606

Adam Hecht
158 Circle Ridge Drive
Burr Ridge, IL 60527

Alexander Kogan Revocable Trust
B. Freud - Ruff, Weidenarr & Reidy
222 North LaSalle Street, 700
Chicago, IL 60601

City of Chicago Water Management
c/o Susana Mendoza, City Clerk
121 N. LaSalle Street
Chicago, IL 60602

Everest Elevator, Inc.
c/o Joseph Hancock, President
9054 Terminal Ave.
Skokie, Illinois 60077

Exposition Carpet, Inc.
c/o Marshall Isaacson, President
5718 North Broadway
Chicago, IL 60660

Fine Homes, LLC
Attn: Alex Loyfman, Registered Agent
4117 W. Oakton
Skokie, IL 60076

International Bank of Chicago
Attn: Michael Lee Tinaglia
Law Offices of Michael Lee Tinaglia, Ltd.
444 N. Northwest Hwy., Suite 350
Park Ridge, Illinois 60068

Fine Homes, LLC
Attn: Richard E. Steck
Jody Rosenbaum
Richard E. Steck & Associates
140 S. Dearborn Street, Suite 1610
Chicago, Illinois 60603

Lena Kogan Revocable Trust
c/o B. Freud - Ruff, Weidenaar & Reidy
222 North LaSalle Street, Suite 700
Chicago, IL 60601

Tricia Putzy
311 W. Superior Street, Suite 500
Chicago, IL 60654

Waste Management, Inc.
Attn: Commercial Billing
700 E. Butterfield Road, 4th Fl.
Lombard, IL 60148

2

Waste Management, Inc.
c/o CT Corporation System
Waste Management of Illinois, Inc.
208 S. LaSalle St., Suite 814
Chicago, Illinois 60604

Commonwealth Edison Co.
c/o Legal Revenue Recovery / Claims Dept.
Three Lincoln Center
Oakbrook Terrance, Illinois 60181

Peoples Gas Light and Coke Company
Attn: Bankruptcy Dept.
130 E. Randolph Dr.
Chicago, Illinois 60601

Office of the United States of the Trustee
Attn: Kathryn M. Gleason
219 S. Dearborn Street, Room 873
Chicago, Illinois 60604

Daniel J. Voelker
Voelker Litigation Group
311 West Superior St., Suite 500
Chicago, Illinois 60654

Illinois Department of Revenue, Bankruptcy
100 W. Washington Street, 7-400
Chicago, IL 60601

D. Patrick Mullarkey
Tax Division (DOJ)
P.O. Box 55
Ben Franklin Station
Washington, DC 20044

United States Attorney
219 South Dearborn Street
Chicago, IL 60604

Territory Manager, Insolvency Territory 7
Internal Revenue Service
230 S. Dearborn Street
Mail Stop 5000 CHI, Room 3022
Chicago, IL 60604

**Via Electronic Case Filing System Service**

- Paul M Bauch on behalf of Creditor Joseph & Igor Vilk
  pbauch@bauch-michaels.com, smohan@bauch-michaels.com

- Amy J Hansen on behalf of Creditor 1st Equity Bank Northwest
  ahansen@lstllp.com, docketing@lstllp.com

- Amy J Hansen on behalf of Defendant 1st Equity Bank Northwest
  ahansen@lstllp.com, docketing@lstllp.com

- Gregory J Jordan on behalf of Attorney Gregory J Jordan
  gjordan@jz-llc.com

- Gregory J Jordan on behalf of Attorney Mark Zito
  gjordan@jz-llc.com

- Michael B Kind on behalf of Debtor 1 1016 West Hollywood, LLC
  michael.kind@lockelord.com,
  karen.soto@lockelord.com;ChicagoDocket@lockelord.com

- Patrick S Layng
  USTPRegion11.ES.ECF@usdoj.gov

- Daniel F Lynch on behalf of Creditor 1st Equity Bank Northwest
  dlynch@lstllp.com, docketing@lstllp.com

- Daniel F Lynch on behalf of Defendant 1st Equity Bank Northwest
  dlynch@lstllp.com, docketing@lstllp.com

- Kenneth A. Michaels, Jr on behalf of Creditor Joseph & Igor Vilk
  kmichaels@bauch-michaels.com, pbauch@bauch-michaels.com

- Phillip W. Nelson on behalf of Attorney Edward Wildman
  phillip.nelson@lockelord.com,
  karen.soto@lockelord.com;ChicagoDocket@lockelord.com

- Phillip W. Nelson on behalf of Debtor 1 1016 West Hollywood, LLC
  phillip.nelson@lockelord.com,
  karen.soto@lockelord.com;ChicagoDocket@lockelord.com

- Phillip W. Nelson on behalf of Plaintiff 1016 West Hollywood, LLC
  phillip.nelson@lockelord.com,
  karen.soto@lockelord.com;ChicagoDocket@lockelord.com

- Jody B Rosenbaum on behalf of Creditor Fine Homes, LLC
  jodyrosenbaum@yahoo.com

- Carolina Y. Sales on behalf of Creditor Joseph & Igor Vilk
  csales@bauch-michaels.com, smohan@bauch-michaels.com

- Michael Lee Tinaglia on behalf of Creditor International Bank of Chicago
  mltinaglia@tinaglialaw.com, jmwretzky@tinaglialaw.com

- Daniel J Voelker on behalf of Creditor Fine Homes, LLC
  dvoelker@voelkerlitigationgroup.com

**For the 800 Building Debtor –**

**Via U.S. Mail**

2006 Heyburn Building, LLC
Attn: Leon Petcov, Manager
332 W. Broadway
Louisville, KY 40203

Chase Environmental Group, Inc.
Attn: Michael Mills, Reg'd Agent
11450 Watterson Ct.
Louisville, KY 40299

Commercial Management, LLC
Attn: Leon Petcov, Manager
332 W. Broadway, Ste. 201
Louisville, KY 40203

Department of the Treasury
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Evens Time, Inc.
Attn: Earl Mullins Jr., Reg'd Agent
1012 South Forth St.
Louisville, KY 40203

Fine Homes, LLC
Attn: Alex Loyfman, Reg'd Agent
4117 W. Oakton
Skokie, IL 60076

International Bank of Chicago
Attn: John Benson, Exec. VP & COO
1210 Central Avenue
Wilmette, IL 60091

IPFS Corporation
Attn: Corp. Service Co., Reg'd Agnt
421 W. Main Street
Frankfort, KY 40601

JBS & Assocs. Accnts and Consltants
Attn: Jeffrey B. Stolberg, Pres.
3700 W. Devon Ave., Ste. E
Lincolnwood, IL 60712

Kentucky Department of Revenue
Legal Branch - Bankruptcy Section
P.O. Box 5222
Frankfort, KY 40602

Louisville Gas & Electric
P.O. Box 9001960
Louisville, KY 40290-1960

Louisville Water Company
Attn: Barbara Dickens, Reg. Agnt
550 S. 3rd St.
Louisville, KY 40202

Matherly Land Consultants, PPLC
Attn: Al Matherly, Reg'd Agent
1302 Tycoon Way
Louisville, KY  40213

Rentpath, Inc.
Attn: C T Corp. Sys., Reg'd Agent
1201 Peachtree St, NE
Atlanta, GA  30361

Republic Bank of Chicago
Attn: Loan Operations
2221 Camden Ct., Fl. 1
Oak Brook, IL  60523

Rumpke of Kentucky, Inc.
Attn: C T Corp. Sys., Reg'd Agent
306 W. Main St., Suite 512
Frankfort, KY  40601

The Murphy Elevator Co.
Attn: D. Gregory Carlisle, Reg. Agt
128 E. Main St.
Louisville, KY  40202

Tikijian Associates
Attn: George Tikijian, President
3755 E. 82nd St., Ste. 265
Indianapolis, IN  46240

800 City Apartments LLC
c/o Jonathan R. Borenstein, Partner
Honigman Miller Schwartz and Cohn LLP
39400 Woodward Avenue, Suite 101
Bloomfield Hills, MI  48304-5151

Louisville Gas & Electric
Attn: Registered Agent
220 West Main Street
Louisville, KY  40202

1st Equity Bank Northwest
C/O: Daniel Lynch & Amy Hansen
Lynch Stern Thompson LLP
150 South Wacker Drive, Suite 2600
Chicago, Illinois 60606

International Bank of Chicago
C/O: Michael Lee Tinaglia &
J. Molly Wretsky
Law Offices of Michael Lee Tinaglia
444 N. Northwest Hwy., Suite 350
Park Ridge, Illinois 60068

Attorney General of Kentucky
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601-3449

Office of the United States Trustee
Attn: Kathryn M. Gleason
219 S. Dearborn St., Room 873
Chicago, Illinois 60604

AM 67334986.2

7

Fine Homes, LLC
C/O: Richard E. Steck & Jody Rosenbaum
Richard E. Steck & Associates
140 S. Dearborn St., Suite 1610
Chicago, Illinois 60603

Fine Homes, LLC
C/O: Daniel J. Voelker
Voelker Litigation Group
311 West Superior St., Ste. 500
Chicago, Illinois 60654

Illinois Department of Revenue
Bankruptcy Section
P.O. Box 64338
Chicago, Illinois 60664-0338

U.S. Environmental Protection Agency
Richard L. Nagle – Bankruptcy Contact
US EPA Region 5
Mail Code: C-14J
Chicago, Illinois 60604

Kentucky Department of Environmental
Protection
c/o Ron Lovitt, Supervisor
Division of Waste Management
200 Fair Oaks Lane
Frankfort, Kentucky 40601

United States Attorney's Office
Northern District of Illinois,
Eastern Division
219 S. Dearborn St., 5th Floor
Chicago, Illinois 60604

**Via Electronic Case Filing System Service**

- Paul M Bauch on behalf of Creditor Joseph & Igor Vilk
  pbauch@bauch-michaels.com, smohan@bauch-michaels.com

- Judy B Calton on behalf of Creditor 800 City Apartments, LLC
  jcalton@honigman.com

- Edward P. Freud on behalf of Creditor Republic Bank of Chicago
  epfreud@rfbnlaw.com

- Mary L Fullington on behalf of Creditor Wyatt, Tarrant & Combs, LLP
  lexbankruptcy@wyattfirm.com

- Amy J Hansen on behalf of Other Prof. 1st Equity Bank Northwest
  ahansen@lstllp.com, docketing@lstllp.com

- Gregory J Jordan on behalf of Attorney Gregory J Jordan
  gjordan@jz-llc.com

- Gregory J Jordan on behalf of Attorney Mark Zito
  gjordan@jz-llc.com

- Patrick S Layng
  USTPRegion11.ES.ECF@usdoj.gov

- Daniel F Lynch on behalf of Other Prof. 1st Equity Bank Northwest
  dlynch@lstllp.com, docketing@lstllp.com

- Kenneth A. Michaels, Jr on behalf of Creditor Joseph & Igor Vilk
  kmichaels@bauch-michaels.com, pbauch@bauch-michaels.com

- Phillip W. Nelson on behalf of Broker Tikijian Associates
  phillip.nelson@lockelord.com,
  karen.soto@lockelord.com;ChicagoDocket@lockelord.com

- Phillip W. Nelson on behalf of Debtor 1 The 800 Building, LLC
  phillip.nelson@lockelord.com,
  karen.soto@lockelord.com;ChicagoDocket@lockelord.com

- Carolina Y. Sales on behalf of Creditor Joseph & Igor Vilk
  csales@bauch-michaels.com, smohan@bauch-michaels.com

- Michael Lee Tinaglia on behalf of Creditor International Bank of Chicago
  mltinaglia@tinaglialaw.com, jmwretzky@tinaglialaw.com

**Certificate of Service**

I, Phillip W. Nelson, an attorney, certify that I caused a copy of (a) the foregoing *Notice of Motion,* (b) the related *Reorganized Debtors' Joint Motion for Entry of a Final Decree Closing Cases* (the "***Motion***") to be served on the foregoing Service List via first class U.S. mail on October 16, 2017 and via the Court's ECF System on those parties entitled to electronic service.

Date: October 16, 2017

*/s/Phillip W. Nelson*

Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
phillip.nelson@lockelord.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| 1016 WEST HOLLYWOOD, LLC,[1] | Case No. 14-02696 |
| Reorganized Debtor. | Hon. Jacqueline P. Cox |
| In re: | Chapter 11 Reorganization |
| THE 800 BUILDING, LLC,[2] | Case No. 15-17314 |
| Reorganized Debtor. | Hon. Jacqueline P. Cox |

## REORGANIZED DEBTORS JOINT MOTION
## FOR ENTRY OF FINAL DECREES CLOSING CASES

Reorganized debtors 1016 West Hollywood LLC and The 800 Building LLC (collectively, the "***Debtors***" and, after the Effective Date (as defined below), the "***Reorganized Debtors***"), by and through their undersigned counsel, hereby move this Court (this "***Motion***") for entry of a final decree, substantially in the form attached hereto (the "***Proposed Final Decree***") closing their respective chapter 11 cases. In support of this Motion, the Reorganized Debtors respectfully state as follows.

### <u>Jurisdiction</u>

1.    The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1]    Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Hollywood Debtor's federal tax identification number are: 1721. The location of the Hollywood Debtor's place of business is 1016 West Hollywood Avenue, Chicago, Illinois 60660.

[2]    Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the 800 Building Debtor's federal tax identification number are: 2596. The location of the 800 Building Debtor's place of business is 820 South 4th Street, Louisville, Kentucky 40202, and its address for notice purposes is 1016 West Hollywood Avenue, Chicago, Illinois 60660, Attn: Leon Petcov, Manager.

2.      Venue in this Court is proper under 28 U.S.C. § 1408.

3.      The statutory bases for the relief requested herein are section 350 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 3022-1 of the Local Bankruptcy Rules of this Court (the "***Local Rules***").

<u>**Background**</u>

**I.**      <u>**Overview of the Reorganized Debtors' Chapter 11 Cases**</u>

4.      On January 29, 2014 (the "***Hollywood Petition Date***"), the Hollywood Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.   The Hollywood Debtor is a single-asset real estate limited liability company that owns, maintains, and operates the property commonly known as 1016 West Hollywood Avenue, Chicago, Illinois (the "***Hollywood Property***") as a residential rental property.   The Hollywood Property is a 72 unit apartment building in the Edgewater neighborhood of Chicago, containing 26 studio units, 37 one-bedroom units, and 9 two-bedroom units.

5.      On May 15, 2015 (the "***800 Building Petition Date***"), the 800 Building Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.   The 800 Building Debtor is an Illinois limited liability company that, as of the  800 Building Petition Date owned and operated two adjacent rental properties in downtown Louisville, Kentucky: (a) a 246-unit residential apartment building known as The 800 Building, with a street address of 800 South 4th Street ("***The 800 Building***"); and (b) a 48-slot parking garage, with a street address of 820 South 4th Street (the "***Garage***").   The 800 Building was sold on June 16, 2015, pursuant to orders entered by the Court, after both an extensive pre-petition and expedited post-petition marketing process, for $20.65 million, yielding net proceeds to the 800 Building Debtor of approximately $4.3 million after paying secured debt and seller closing costs.   The 800 Building

Debtor continues to own and manage the Garage following its emergence from chapter 11 protection. The Debtors were both formed by Leon Petcov to own their respective properties.

6.      During the chapter 11 cases, the Reorganized Debtors operated their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner was made in either chapter 11 case, and no official committees were appointed or designated.

7.      On January 22, 2016, the Court entered an order [Hollywood Docket No. 228 / 800 Building Docket No. 137] confirming the *First Amended Joint Plan of Reorganization of 1016 West Hollywood LLC and The 800 Building LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Hollywood Docket No. 217 / 800 Building Docket No. 127] (as amended, supplemented, or modified from time to time, the "***Plan***"). On January 28, 2016, the Plan became effective and was consummated and both Reorganized Debtors emerged from chapter 11 protection.[3]

8.      As the Court is aware, the purpose of the chapter 11 cases was to allow the Petcovs and the Reorganized Debtors to deal with various disputes with three key creditor constituencies: (1) International Bank of Chicago ("***IBC***"); (2) 1st Equity Bank Northwest ("***1st Equity***"); and (3) Fine Homes LLC ("***Fine Homes***"), Fine Homes' owners Michael and Faina Loyfman (the "***Loyfmans***"), and the Loyfmans' son, Alex Loyfman (together with Fine Homes and the Loyfmans, the "***Loyfman Parties***"). The Petcovs, the Loyfman Parties, and 1st Equity were involved in a three-way dispute regarding the single-family residence commonly known as 70 Harbor Street, Glencoe, Illinois ("***70 Harbor***"), that centered around 1st Equity's loans to the Loyfman Parties, which were secured by 70 Harbor, and the Petcov's obligations under the

---

[3]      *See Notice of (I) Order (A) Approving the Adequacy of the Disclosure Statement for, and (B) Confirming the First Amended Debtors' Joint Plan of Reorganization and (II) Occurrence of the Effective Date* [Hollywood Docket No. 236 / 800 Building Docket No. 138].

Article of Agreement for Warranty Deed (the "***Contract for Deed***") with Fine Homes, pursuant to which the Petcovs agreed to purchase 70 Harbor.  Those disputes had eventually involved the Debtors and IBC (due to IBC's secured loans to the Debtors and a number of their affiliates owned by the Petcovs).  The Debtors filed their chapter 11 cases to provide a means to restructure these obligations and resolve the Petcov Parties' disputes with 1st Equity, IBC, and the Lofyman Parties in comprehensive way.

9.     The twin pillars of the Plan were: (a) the restructuring and pay-off over time of the Debtors' IBC obligations; and (b) the purchase by the 800 Building Debtor of 1st Equity's mortgage on, and the notes secured by, 70 Harbor for a total of $4.9 million—consisting of a $3.5 million initial cash payment and a $1.4 million promissory note to be paid off no later than July 31, 2017 (the "***1st Equity Note Purchase Promissory Note***").  Purchase of the 70 Harbor mortgage and debt from 1st Equity was intended to resolve the Petcov Parties disputes with 1st Equity and allow the Reorganized 800 Building Debtor to complete 1st Equity's foreclosure on 70 Harbor and use the resulting judgments to end the Petcov Parties' disputes with the Loyfman Parties under the Contract for Deed.  The terms of the Plan provided that the purchase of the 1st Equity notes and mortgage would require additional documentation beyond the plan, including the promissory note, allonges, assignment documents, and other ancillary documents to address aspects of the parties' agreement in full (the "***Assignment Documents***").

10.     As the Court is also aware, following the confirmation of the Plan, the Reorganized Debtors pursued and completed the foreclosure of 70 Harbor but also ended up engaging in further litigation with 1st Equity before this Court with respect to disputes involving the Assignment Documents.  Fortunately, the Reorganized Debtors, the Petcovs, the Loyfman

Parties, and 1st Equity were able to reach agreements regarding certain transactions that allowed them to settle their disputes.  Those transactions closed on or about March 31, 2017.

11.    As set forth in greater detail in the *Disclosure Statement for the Joint Plan of Reorganization of 1016 West Hollywood, LLC and The 800 Building, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 169] (the "***Disclosure Statement***"), the Debtors' chapter 11 filings were necessitated by a series of interrelated transactions and obligations involving the Petcov Parties, IBC, 1st Equity, and the Loyfman Parties.  A brief review of these facts is helpful to understanding the arc of the Debtors' chapter 11 cases.

## II.    Narrative Discussion of the Reorganized Debtors' Cases and Their Resolution

12.    On May 5, 2008, the Petcovs entered into the Contract for Deed, pursuant to which the Petcovs agreed to purchase 70 Harbor from Fine Homes.

13.    At the time that the Petcovs entered into the Contract for Deed, 70 Harbor secured loans to Fine Homes by 1st Equity in the principal amount of approximately $4.5 million (the "***70 Harbor Notes***") pursuant to a mortgage in favor of 1st Equity (the "***70 Harbor Mortgage***"). In late 2009, the Petcovs agreed to guarantee the 70 Harbor Notes and also caused the Hollywood Debtor to grant Fine Homes a third-priority mortgage on the Hollywood Property to guaranty the Petcovs' obligations under the Contract for Deed.  The Petcovs also caused the Hollywood Debtor to grant 1st Equity a fourth-priority mortgage on the Hollywood Property to secure the Petcovs' guaranty of the 70 Harbor Notes.

14.    As the 2008-2009 Financial Crisis began to gain momentum, the Petcovs' rental properties, including Debtors' properties, encountered financial difficulty as occupancy rates and current rent payments slipped.

15.    In August 2012, the Hollywood Debtor missed a monthly payment in August 2012 on its $3.6 million first-lien mortgage and was unable to pay the second installment of its

2011 real property taxes.  Among other things, this caused a default under the Hollywood Debtor's first-lien term loan, then held by an entity called VCP 1016 Hollywood LLC, which started an action to foreclose on the Hollywood Debtor's rental property in the Circuit Court of Cook County, Illinois, Chancery Division (the "***Chancery Division***"), captioned VCP 1016 Hollywood LLC v. 1016 W. Hollywood LLC et al., Case No 12 CH 34901 (the "***Hollywood Foreclosure***").

16.    At the time VCP 1016 Hollywood LLC commenced the Hollywood Foreclosure, IBC held a $1.3 million second-lien position on the Hollywood Property.  However, IBC also held an approximately $450,000 loan secured by a second mortgage on The 800 Building.  IBC also held loans with several of the Debtors' affiliates, all of which were owned by the Petcovs, totaling approximately $24.2 million — all of which debt was cross-collateralized, also guaranteed by Leon Petcov (collectively, the "***IBC Loans***").  Accordingly, to protect its second-lien position in the Hollywood Property and its cross-collateralized interests in the 800 Building Debtor and the Debtors' affiliates, IBC acquired the VCP 1016 Hollywood LLC first-lien loan.

17.    With their real estate interests struggling, the Petcovs were unable to make the required payments on the Contract for Deed and a related promissory note with Fine Homes executed by Leon Petcov to finance part of the obligations under the Contract for Deed.  Fine Homes, in turn, was unable to pay the 1st Equity Note, which went into default.

18.    On or about April 26, 2013, Fine Homes filed a complaint against the Petcovs seeking to enforce the Contract for Deed in a proceeding before the Law Division of the Circuit Court of Cook County, Illinois (the "***Law Division***"), captioned Fine Homes LLC v. Leon Petcov and Helen Petcov, Case No. 2013 L 004334 (the "***Contract Action***").

6

19.     Fine Homes also sought a receiver in the Hollywood Foreclosure.  With the receiver motion set to be heard on January 29, 2014, the Hollywood Debtor was compelled to seek chapter 11 relief to take advantage of the breathing room provided by the automatic stay to retain possession of its property and reorganize its obligations using the resources of the Bankruptcy Code.

20.     Additionally, on or about March 13, 2014, 1st Equity commenced a proceeding to foreclose the 70 Harbor Mortgage and enforce the 70 Harbor Notes in the Chancery Division, captioned 1st Equity Bank Northwest v. Fine Homes LLC, et al., Case No. 2014 CH 04372 (the "*Foreclosure Action*").  On August 1, 2014, 1st Equity also filed a complaint in the Law Division against the Petcovs seeking to enforce their guarantee of the 70 Harbor Notes, captioned 1st Equity Bank Northwest v. Leon Petcov and Helen Petcov, 2014 L 008068 (the "*Guarantee Litigation*").

21.     While the Hollywood Debtor's chapter 11 case progressed, the Hollywood Debtor and the Petcovs sought to reach a negotiated solution with IBC, Fine Homes, and 1st Equity, while 1st Equity pushed forward on the Guarantee Litigation against the Petcovs.  At the same time, the Hollywood Debtor and the Petcovs continued to have negotiations, particularly with IBC and 1st Equity about a means to restructure the Hollywood Debtor's and the Petcovs' obligations.

22.     While the Hollywood Debtor and the Petcovs were negotiating with 1st Equity, IBC, and the Loyfman Parties, the 800 Building Debtor was preparing to sell The 800 Building for approximately $20.65 million—enough to (a) pay off the $15.5 million first-lien mortgage on The 800 Building in favor of Republic Bank of Chicago ("*Republic Bank*"), (b) pay off IBC's $450,000 second-line mortgage on The 800 Building, mentioned above, and (c) leave $4.3

million in proceeds (which was still IBC's collateral) which could be used (with IBC's agreement) to fund the Hollywood Debtor's plan and make a settlement with IBC, 1st Equity, and the Loyfmans.  Through negotiations with IBC led by Locke Lord, the Hollywood Debtor, the Petcovs, and IBC had reached an agreement in principal on the terms of restructuring the IBC Loans (the "**IBC Restructuring Support Agreement**") that would allow The 800 Building sale proceeds to be used for these purposes.

23.     When 1st Equity learned of these negotiations, it filed an "emergency" motion in the Guarantee Litigation, claiming that the Petcovs were preparing to leave the country with The 800 Building sale proceeds, and convincing the Guarantee Litigation court to reverse itself on a prior denial of summary judgment in favor of 1st Equity.  Accordingly, on February 15, 2015, the Law Division issued a judgment in the Guarantee Litigation in favor of 1st Equity and against the Petcovs personally in the amount of $6.345 million (the "**Guarantee Judgment**"), which 1st Equity also claimed was secured by its fourth-lien mortgage against the Hollywood Property.

24.     The Loyfmans also learned of the upcoming sale of The 800 Building and caused Fine Homes to file a *lis pendens* against The 800 Building.  The *lis pendens* had no meritorious legal basis, and neither the Loyfmans nor Fine Homes had a valid claim against the 800 Building Debtor, let alone a lien on its property.  Nevertheless, the title company refused to insure over the *lis pendens* and removal of the *lis pendens* through available state-court processes would have imperiled the sale, as the purchaser's financing commitment would have expired.  Additionally, pursuant to the terms of a forbearance with Republic Bank, the 800 Building Debtor would have been obligated to pay Republic Bank an additional $500,000 if it could not complete the sale to pay off the Republic Bank loans by June 15, 2015.  As a result, the 800 Building Debtor was

forced to seek chapter 11 relief to complete, with the assistance of Locke Lord, the expedited

sale of The 800 Building pursuant to section 363(f) of the Bankruptcy Code, free and clear of the

*lis pendens*.   On June 9, 2015, this Court entered an order approving the sale of The 800

Building.   The sale closed on June 12, 2015.

25.      At the same time that the Debtors and Locke Lord worked to complete the sale of

The 800 Building, they also continued negotiations with IBC and 1st Equity.   With respect to

IBC, those discussions centered around confirming a plan of reorganization that would

implement the IBC Restructuring Support Agreement and allow for the resolution of 1st Equity's

and Fine Homes' claims—which continued to be the main difficulties.

26.      Ultimately, 1st Equity, the Debtors, and the Petcovs began to focus their efforts

around a plan structure pursuant to which (a) the 800 Building Debtor would purchase the 70

Harbor Notes, the 70 Harbor Mortgage and the Guarantee Judgment against the Petcovs, (b) 1st

Equity's fourth-priority mortgage on the Hollywood Property would be released pursuant to the

Plan, and (c) the Reorganized Debtors and the Petcovs would use the 70 Harbor Notes and the 70

Harbor foreclosure action to resolve the Loyfman Parties' Contract for Deed claims, including

Fine Homes' third-priority mortgage on the Hollywood Property.   It was anticipated that, in the

end, 1st Equity would receive its agreed settlement amount of $4.9 million, Loyfman Parties'

claims would be resolved, the Hollywood Debtor and the Petcovs would be released from their

obligations to the Loyfman Parties, and the reorganized 800 Building would own 70 Harbor free

and clear and could dispose of it profitably.

27.      To this end, on June 2, 2015, 1st Equity's counsel forwarded a term sheet (the

"***1st Equity Term Sheet***" or the "***Term Sheet***") to Locke Lord that, among other things called for

1st Equity to be paid total consideration of $4.7 million for the 70 Harbor Notes, the 70 Harbor

Mortgage, and the Guarantee Judgment—consisting of $3.0 million in cash through a confirmed plan, with a $1.7 million note from the Reorganized 800 Building Debtor with an 18-month maturity, referred to above as the 1st Equity Note Purchase Promissory Note, guaranteed by the Petcovs, and providing 1st Equity with certain relief in the event of a default.

28.     Through the second half of 2015, the Debtors, the Petcovs, and IBC continued to finalize the documentation for the IBC Restructuring Support Agreement.  The Debtors and the Petcovs also continued to negotiate with 1st Equity on the terms of a global deal along the lines set forth in the 1st Equity Term Sheet.  While Locke Lord endeavored to push forward negotiations on behalf of the Debtors as quickly as possible, progress on the Term Sheet was slow.  A key sticking point was that, in order for the Petcovs to obtain the financing necessary to repay the $1.7 million note to 1st Equity, and to refinance the IBC Loan pursuant to the IBC Restructuring Support Agreement, the Petcovs would need to guarantee the refinancing obligations of the Reorganized Debtors.  However, no bank would accept the Petcovs' guarantees for these new refinancing loans while the Petcovs were subject to the Guarantee Judgment and the citations issued by 1st Equity—thus, it would be impossible for the Reorganized Debtors to fulfill the terms of any proposed plan based on the IBC Restructuring Support Agreement and the 1st Equity Term Sheet.

29.     On September 8, 2015, Locke Lord sent 1st Equity's counsel a revised version of the Term Sheet that attempted to address this issue by giving 1st Equity first-lien mortgages on two parking lots in Louisville, Kentucky owned by two of the Petcovs' non-debtor LLCs (the "***Kentucky Parking Lots***"). 1st Equity rejected this proposal on the basis that without the Guarantee Judgment, 1st Equity would be required to start at square one if there was a default.

30.     Accordingly, on September 11, 2015, Locke Lord responded on behalf of the Debtors with a revised proposal that again explained the guarantee issue and instead offered to give 1st Equity a quit claim deed to 70 Harbor, to be held in escrow and released to 1st Equity only in the event of a default or maturity of the promissory note.

31.     Negotiations on the Term Sheet effectively stalled until IBC, 1st Equity, the Petcovs, and the Debtors (represented by Locke Lord) conducted an in-person meeting at the offices of IBC's counsel on December 10, 2015.  At that meeting, among other things, the parties' agreed on the following:

- 1st Equity would receive total compensation for the 70 Harbor Notes, the 70 Harbor Mortgage, and the Guarantee Judgment in the amount of $4.9 million, instead of $4.7 million.

- The initial cash payment to 1st Equity under the Debtors' plan would increase from $3.0 million to $3.5 million.

- The 1st Equity Note Purchase Promissory Note now be a $1.4 million note, instead of $1.7 million, but would continue to have an 18-month maturity (based on the Plan Effective Date).

- The Guarantee Judgment would be released on the Plan Effective Date, but if the Reorganized 800 Building failed to repay the 1st Equity Note Purchase Promissory Note by the end of the 18 months, the amount owed on the note would jump to $3.7 million as a means of "reinstating" the Guarantee Judgment.

32.     Between the December 10, 2015 meeting and Monday, January 18, 2016, the parties continued to exchange drafts of the Term Sheet that addressed various issues, including whether 1st Equity would finance a separate $400,000 loan against the Kentucky Parking Lots

and whether (and to what extent) the Reorganized 800 Building would receive a discount for paying the 1st Equity Note Purchase Promissory Note early.   Ultimately the concept of borrowing against Kentucky Parking Lots concept was dropped, and the parties also settled on a $200,000 discount for paying off the 1st Equity Note Purchase Promissory Note within 60 days of the plan effective date.

33.    On January 18, 2016, 1st Equity added a further demand under the Term Sheet: because 1st Equity was being examined and its regulators where presently in its offices, 1st Equity needed the Debtors' plan to go effective—and, most importantly, for 1st Equity to receive the initial $3.5 million cash payment—no later than January 28, 2016, or there could be no deal.

34.    With the confirmation hearing on the Debtors' joint plan scheduled for the following day, January 19, 2016, the Debtors agreed to 1st Equity's newest demand.   At the same time, the Debtors learned that the Loyfman Parties had sold certain claims against the Debtors, to Igor and Joseph Vilk (the "*Vilks*").   Locke Lord effectively negotiated a resolution of these claims into the terms of the Plan so that confirmation of the Plan could go forward without interruption.

35.    At the January 19, 2016 confirmation hearing, the Debtors informed the Court of the deal with 1st Equity and the Vilks and asked the Court, and the Court agreed, to continue the confirmation hearing to January 21, 2016.   On January 20, 2016, the Debtors filed an amended version of the Plan that incorporated the terms of the 1st Equity deal and the Vilks deal, and 1st Equity filed amended ballots to vote in favor of the Plan [Docket No. 219].   On January 21, 2016, the Court conducted the confirmation hearing and ruled that it would confirm the Plan.   On January 21, 2016, the Court entered an order confirming the Plan.   The Plan became effective on January 28, 2016 (the "*Effective Date*").

36.     As noted above, following the occurrence of the Effective Date, the Reorganized Debtors and 1st Equity engaged in certain additional litigation regarding disputes about their rights under the Plan and the supplemental documents implementing the settlements and agreements that formed the basis for the Plan.   Locke Lord continued to represent the Reorganized Debtors in litigating and resolving these disputes.   Locke Lord also represented The 800 Building Debtor in pursuing the Foreclosure Action with respect to 70 Harbor against Fine Homes and successfully completed the foreclosure.   Having obtained 70 Harbor, The 800 Building then sought to resolve its Contract for Deed disputes with the Loyfman Parties. Ultimately, the Reorganized Debtors were successful in negotiating a three-way resolution among the Reorganized Debtors, 1st Equity, and the Loyfman Parties that was consummated in a series of transactions that closed on or about March 31, 2017.   Since that time, the Reorganized Debtors have moved forward with their restructured businesses.

## Relief Requested

37.     By this Motion, the Reorganized Debtors respectfully request that this Court issue final decrees substantially in the form of the Proposed Final Decree closing these chapter 11 cases pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

## Basis for Relief

## I.      Standard for Closing a Chapter 11 Case

38.     Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), which implements section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Bankruptcy Rule 3022.

39.    The term "fully administered" is not defined by either the Bankruptcy Code or the Bankruptcy Rules.  The Advisory Committee Notes to Bankruptcy Rule 3022, however, set forth the following non-exclusive list of factors to be considered to determine whether a case has been fully administered: (a) whether the order confirming the plan has become final; (b) whether deposits required by the plan have been transferred; (c) whether the property proposed by the plan to be transferred has been transferred; (d) whether the debtor [or its successor] has assumed the business or management of the property dealt with by the plan; (e) whether payments under the plan have commenced; and (f) whether all motions, contested matters and adversary proceedings have been finally resolved.

40.    These six factors, however, are merely guidelines that aid a court's determination, and each of the factors need not be present before a court enters a final decree. *See In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990).  In particular, courts have held that open related adversary proceedings, for example, should not be enough to prevent closure of a bankruptcy case.  *See, e.g., In re JMP-Newcor Inter'l, Inc.*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (Barliant, J.) (where the only matters remaining are certain disbursements and an adversary proceeding, case can be closed); *In re McClelland*, 377 B.R. 446, 453 (Bankr. S.D.N.Y. 2007) (if an estate is otherwise fully administered, one adversary proceeding should not delay closing case); *In re Union Home & Indus., Inc.*, 375 B.R. 912, 918 (10th Cir. BAP 2007) (same).  Courts have also found that it is not necessary to complete a final distribution under a plan of reorganization to close a case. *See, e.g., JMP-Newcor Inter'l*, 225 B.R. at 465; *Jay Bee Enters.*, 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997).

## II.    It Is Appropriate to Close these Chapter 11 Cases.

41.    The Reorganized Debtors estates has been fully administered within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to enter a final decree

closing the chapter 11 case.  The confirmation order became final and non-appealable on or about March 7, 2012.  Moreover, the Plan has been substantially consummated: (a) the Reorganized Debtors have received the property to which they are entitled under the Plan; (b) the Reorganized Debtors have assumed the business and management of that property; and (c) the Reorganized Debtors have the other distributions called for under the Plan.

42.     The Reorganized Debtors have worked diligently to resolve all disputed claims, as described above.  All that remains is for the Reorganized Debtors to continue to operate their businesses and fulfill their ongoing, post-reorganization obligations identified in the Plan. Moreover, leaving the chapter 11 case open will cause the Reorganized Debtors to incur substantial quarterly U.S. Trustee fees.  *See* 28 U.S.C. § 1930.  If the chapter 11 cases are not closed, the Reorganized Debtors will be required to continue paying quarterly fees to keep the cases open.  These quarterly fees are a significant burden upon the Reorganized Debtors and (given the status of the chapter 11 case) are an inefficient use of resources.  Accordingly, there is ample justification for entry of final decrees closing the chapter 11 cases at this time.

WHEREFORE, the Reorganized Debtors respectfully request that this Court enter final decrees substantially in the form of the Proposed Final Decree (a) closing these chapter 11 cases and (b) granting such other and further relief as this Court deems appropriate.

Dated: October 16, 2017                    Respectfully submitted,

**1016 WEST HOLLYWOOD, LLC, AND THE 800 BUILDING, LLC**

By:  */s/Phillip W. Nelson*
          One of Their Attorneys

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-201-2000
Facsimile: 855-587-1388
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Counsel to the Reorganized Debtors*